Ada ASH et al., Plaintiffs-Appellants,

v.

HOBART MANUFACTURING COMPA-
NY, Defendant-Appellee.

No. 72-1897.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 16, 1973.

Decided Aug 9, 1973.

John B. Huber, Dayton, Ohio, for plaintiffs-appellants; Ray E. Schmidt, Dayton, Ohio, on brief; Dorfmeier, Schmidt & Stone, Dayton, Ohio, of counsel.

Daniel W. Hammer, Cleveland, Ohio, for defendant-appellee; Thompson, Hine & Flory, Cleveland, Ohio, Dean E. Denlinger, Smith & Schnacke, Dayton, Ohio, on brief.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and WILSON,* District Judge.

FRANK W. WILSON, District Judge.

This is an appeal from a decision by the District Court concluding that the plaintiff-appellants had failed in their proof to establish sexual discrimination by the defendant-appellee in employment practices. The case was tried before the District Court sitting without a jury. At the conclusion of the plaintiff's proof, and upon a motion for judgment made pursuant to Rule 41(b), Federal Rules of Civil Procedure, the District Court made findings adverse to the plaintiffs and denied the relief sought by the plaintiffs under the provisions of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]. It is contended that the District Court was in error in denying relief and dismissing the complaint for the reasons hereinafter stated and considered.

The record of this appeal reflects that the plaintiffs are 13 individual employees or former employees of Hobart Manufacturing Company, along with their local union collective bargaining agent. (For reasons not set forth in the record, the number of individual employees participating in the lawsuit appears to have been reduced to eight by the time of this appeal.) The substance of the plaintiffs' complaint is that following enactment of the 1964 Civil Rights Act Hobart continued to practice sexual discrimination in their Receiving Department, and that the plaintiffs, ten of whom were female employees and three of whom were male employees within that Department, have suffered wage discrimination and loss of seniority rights and privileges as a result of Hobart's unlawful employment practices in this regard. More particularly, it is contended that although in 1966, as a consequence of the Civil Rights Act of 1964, Hobart abolished its former practice of designating "male" and "female" employee classifications throughout its plant, the change was a change in name only in the Receiving Department where the plaintiffs were employed. In that Department, it is alleged, the former male positions were merely redesignated as "general bench inspectors" and the former female positions were redesignated as "departmental bench inspectors" and the prior discriminations on the basis of sex continued. Although the work in the two classifications was the same, so the plaintiffs contend, a wage differential of 18¢ an hour was retained. Furthermore, employees in the "departmental bench inspectors" classification (female) were not permitted to "bid" or "bump" into the higher paying and more desirable positions in the "general bench inspectors" classification (male). Upon these allegations the plaintiffs sought an order

* Honorable Frank W. Wilson, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

of the Court establishing one classification for all employees working in the Receiving Department and further sought monetary compensation, including back pay, for losses suffered by reason of past unlawful discrimination. Such monetary damages were claimed from and after 1966, this lawsuit having been initially filed in 1968.

The defendant's answer concedes that in 1966 the male and female classifications as previously practiced in the Receiving Department were redesignated, with the former male classification being designated "general bench inspectors" and the former female classification being redesignated "departmental bench inspectors." However, it contends that sexual discriminations were abolished in that year in all other portions of their plant and that to the extent it was retained in the Receiving Department, this was done in the course of collective bargaining negotiations with the plaintiff-union and in a mutual effort to comply both with the Civil Rights Act of 1964 and the then applicable laws of Ohio regulating the employment of females, including specifically Section 4107.43 of the Ohio Revised Code prohibiting the employment of females in positions "requiring frequent or repeated lifting of weights over twenty-five pounds." The defendant concedes that an 18¢ per hour wage differential has at all times continued to exist between the general and the departmental bench inspector classifications, but contends that the wage differential is not based upon sex, but rather is based upon differences in the duties subject to be performed in the two job classifications. The defendant concedes that it excluded the employment of females in the "general bench inspector" classification until 1969, including the right of females to "bid" or "bump" into that classification, but contends that it did so only in an effort to avoid prosecution under the Ohio weight lifting statute above referred to. With a resolution of the differences between the federal and state enforcement officials and notification by the state enforcement authorities in 1969 that they would no longer enforce the Ohio female protective statutes, including the weight lifting statute, the defendant contends that it promptly opened the "general bench inspectors" classification to females and eliminated all sexual restrictions in "bidding" or "bumping" into any classification. In summary, the defendant contends that sexual discrimination played no part in the establishment of the 18¢ per hour wage differential between the general and the departmental bench inspector positions, that restrictions imposed on the employment of females in the "general bench inspectors" classification between 1966 and 1969 was occasioned by a good faith effort on the part of the defendant, as well as the plaintiff-union, to comply with applicable federal and state laws, with the consequence that no award of back pay for that period would be in order, and, finally, that since 1969 no sexual limitation or discrimination of any kind has been practiced by the defendant with regard to any job classification, including the two complained of job classifications.

The case went to trial upon these contentions. At the conclusion of the plaintiffs' proof the Court sustained the defendant's motion made pursuant to Rule 41(b), F.R.C.P., for judgment on the plaintiffs' proof and entered findings from the bench adverse to the plaintiffs' contentions. Shortly thereafter the trial court supplemented these findings by filing an "Opinion and Judgment." The trial court's findings were in substance: (1) the plaintiffs failed to establish by a preponderance of the evidence that the physical demands and requirements of the positions of "departmental bench inspector" and "general bench inspector" were substantially equivalent; (2) the defendant's refusal to allow females to enter the "general bench inspector" classification prior to September of 1969 was based upon its attempt to conform to the requirements of the Ohio female protection laws, particularly Section 4107.43 of the Ohio Revised Code limiting weight

lifting by female employees; (3) after notice in September of 1969 from Ohio officials that enforcement of that State's statutes restricting female employment would be discontinued, the defendant in 1970 opened all job classifications to bidding and bumping without regard to sex, although it was not until 1972, in the case of Jones Metal Products Company v. Walker, 29 Ohio St.2d 173, 281 N.E.2d 1, that the Ohio statutes were finally struck down by that State's Supreme Court as being in violation of the Supremacy Clause of the Federal Constitution; (4) in adherence to its decision in the case of Ridinger v. General Motors Corp., 325 F.Supp. 1089 (1971), the Court would not hold the defendant liable for an unlawful employment practice resulting from compliance with the Ohio statutes; and (5) since no female plaintiff ever sought to bid or bump into the general bench inspector classification, the plaintiffs suffered no injury from the alleged violation.

Essentially upon this state of the record the plaintiffs contend that the trial court committed three reversible errors, each of which would require a remand for a new trial. Citing initially a statement made by the trial court in its remarks from the bench to the effect that " . . . good faith isn't in this case at all," the plaintiffs contend that this is an erroneous statement of the law which led the trial court to ignore all evidence demonstrating that the defendant never complied with the Ohio state laws, but rather was in violation of both the Ohio female lifting law and the Federal Civil Rights Act throughout the period from 1966 to 1969, during which period it now seeks to be excused from its violation of federal law by claiming compliance with state law.

Of course, an employer will not be permitted to ignore or violate a state statute and then claim reliance upon that statute as justifying in any manner his violation of a conflicting federal law. Furthermore, even good faith reliance by an employer upon a conflicting state female employment statute, which statute was later declared invalid, would not render that employer's actions any less a violation of the Federal Civil Rights Act. However, as contended by the plaintiffs, evidence of good faith reliance is indeed relevant. It is relevant to the proper exercise by the trial court of its discretion in withholding or awarding back pay or other compensation for the period of such reliance. See, in this regard, the decision of this Court in the case of Manning v. International Union, 466 F.2d 812 (6 Cir. 1972), as well as the cases of LeBlanc v. Southern Bell Telephone & Telegraph Co., 333 F.Supp. 602 (E.D.La., 1971), aff'd 460 F.2d 1228 (5th Cir. 1972); and Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002 (9th Cir. 1972). Upon the finding of an intentional unlawful employment practice, the fashioning of a remedy, including an award of back pay, is left to the sound discretion of the trial court pursuant to the provisions of Section 2000e-5(g), Title 42 U.S.C. The Court is to fashion the remedy with equitable principles in mind, one such principle being the exercise of good or bad faith on the part of the employer in making compliance with a conflicting state law.

The record in this case, however, fails to bear out the plaintiffs' contention that the trial court ignored the principles of law hereinabove stated or excused the defendant from the requirement of good faith reliance upon the conflicting state law. While the statement that " . . . good faith isn't in this case at all," was made in the course of the Court's remarks from the bench, the meaning and significance of this statement, when read in context, cannot be ascertained with any certainty. The remark was made immediately following, and apparently in connection with, the Court's finding that the plaintiffs had failed to prove discrimination in the establishment of the 18¢ wage differential between the general and departmental bench inspector jobs. It is of greater importance, however, to note that in the trial court's more carefully prepared

opinion and judgment, not only is the statement omitted, but rather the Court expressly found "reliance" upon the Ohio statute by the defendant and "compliance" by the defendant with those statutes. Support may be found in the record for these findings, and they are not clearly erroneous. In the course of making these findings the Court made reference to its former decision in the case of Ridinger v. General Motors Corp., 325 F.Supp. 1089 (1971), and expressly stated that it was adhering to that decision. A reading of the decision in the *Ridinger* case will reflect that the trial court there amply and correctly stated the requirement of good faith reliance. The plaintiffs' initial complaint of error is accordingly without merit.

■ Closely related to the plaintiffs' initial contention of error is the further assignment that the defendant employer must have taken affirmative action to resolve the conflict between the state and federal laws before it would be entitled to claim good faith reliance upon the state law, and that such was not shown to have been done in this case. While lack of affirmative action may well be relevant to the issue of the employer's good faith reliance, it is not decisive of that issue. Rather, it is evidence to be weighed by the trier of fact along with all of the facts and circumstances in the case. The assignment is without merit in the context of this case.

■ The final contention put forth on behalf of the plaintiffs is that the findings of the trial court are unsupported by the evidence or are contrary to the weight of the evidence. This contention is argued upon the premise that the evidence is to be viewed in the light most favorable to the plaintiffs. The case having been tried by the Court sitting without a jury, the appropriate test

to be applied by this Court in reviewing the evidence is the "clearly erroneous" test as laid down in Rule 52, F.R.C.P. The fact that the trial court made its findings at the conclusion of the plaintiffs' evidence pursuant to Rule 41(b), F.R.C.P., does not alter the appellate review standard to be applied. See 5 Moore's Federal Practice and Procedure, ¶ 41.13 [4].

It should be noted that the findings of the trial court in this case are based both upon a lack of evidence sufficient to establish a preponderance as well as evidence preponderating in favor of findings adverse to the position of the plaintiffs. Without attempting to undertake a full discussion of the record as it relates to each finding of the trial court, suffice it to say that this Court has carefully reviewed the trial record and is of the opinion that neither of the findings of fact of the trial court is clearly erroneous. Rather, support for each finding may be found in the record.

■ In conclusion, it may be noted that, although exhaustion of administrative remedies is alleged, the same is generally denied as to all plaintiffs and specifically denied as to six plaintiffs. This not being a class action, the filing of charges with the Equal Employment Opportunity Commission and administrative action by that Commission is a condition precedent to the maintenance of this action under 42 U.S.C. § 2000e–5. See Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355 (6th Cir. 1969). Proof on this issue appears either to have been omitted from the record or its omission was overlooked in the proceedings below. Further attention to this omission is unnecessary, however, in view of the disposition of the lawsuit upon this appeal.

The judgment of the District Court in dismissing this lawsuit is affirmed.