Glenn WILLMAN, Plaintiff
and Appellant,

v.

The HARTY COMPANY, a North Dakota
corporation, and Bower E. Rudrud and
Alice V. Rudrud, Defendants and Appel-
lees.

Civ. No. 9817.

Supreme Court of North Dakota.

May 28, 1981.

Robert W. Palda, Minot, for plaintiff and appellant.

Tim G. Bryan, Casselton, for the Harty Co., defendant and appellee.

E. J. Rose, Bismarck, for Bower E. Rudrud and Alice V. Rudrud, defendants and appellees.

SAND, Justice.

The plaintiff, Glenn Willman [Willman], appealed from a dismissal on the merits of his complaint against the defendants, the Harty Company and Bower E. Rudrud and Alice V. Rudrud [Rudruds], and from a "summary" judgment sustaining the Rudruds' counterclaim.

On 1 May 1971 the Harty Company and Willman entered into a written lease agreement whereby Willman agreed to rent a portion of the Bus Depot building in downtown Bismarck, North Dakota, from the Harty Company. The portion of the Bus Depot building which Willman rented included the bus facilities and a restaurant. The Rudruds rented another portion of the building which housed their photography business.

The lease was for a period of five years with an option to renew for an additional five-year period upon such terms and conditions as the parties found to be mutually agreeable. The lease also contained a first-refusal option which gave Willman the first right to meet any offer to purchase the bus facilities and the restaurant from the Harty Company at any time during the term or renewal term of the lease.

On the same day the Harty Company also executed a separate first-refusal option in favor of the Willmans stating "this refusal option shall in all things terminate five (5) years after the date thereof, unless otherwise extended by the parties." This option covered the entire Bus Depot building and the land on which the building was located.

The trial court found the lease was continued after the termination date (1 May 1976) on the same terms, including the right of first refusal, except the continuation was on a year-to-year term with an increase in rent. The trial court also found the lease was continued on the same terms, including the right of first refusal on 1 May 1977 for an additional year.

The Harty Company wrote a letter dated 27 April 1978 to Willman which contained the following passage:

"Take notice that upon expiration of the term of your Rental Agreement, April 30th, 1978, that any holding over will not effect a renewal for an additional term, or year, but will, if you elect to continue your tenancy, effect and be limited to a tenancy at will, for an additional one month interval only.

"During the 30-day extension, you will be required to contact us to negotiate a renewal at an increased rental. Be prepared to consider, in addition thereto, a contribution toward general repairs. Again, if your are inclined toward a renewal it will be incumbant upon you to initiate overt action. We will not be bound during this interval by an option of first refusal for you to purchase."

No written response was received by Harty, but oral negotiations continued without any agreement.

In early May of 1978, the Rudruds made an offer to purchase the leased property. The offer was accepted and the sale was closed and title was conveyed to the Rudruds on 28 July 1978.

Willman continued to occupy the premises after 1 May 1978 and instituted the present action against Harty Company and the Rudruds asserting the terms of the original lease, including the preferential right of first refusal, were still in effect at the time the Harty Company sold the property to the Rudruds. Willman's complaint sought specific performance under the alleged right of first refusal or, in the alternative, monetary damages.

The defendant's answer, in substance, asserted the original lease with the right of first refusal had terminated. The Rudruds also filed a counterclaim against Willman seeking a $200.00 per month increase in rent from 1 January 1979. The Rudruds had increased the rent from $1,335 to $1,535 per month effective in January 1979. However, Willman continued to pay $1,335 a month from January 1979 to April 1980.

The trial court heard the action without a jury. The parties presented oral testimony and written testimony in the form of exhibits.

After the bench trial, the trial court issued a judgment dismissing Willman's complaint with prejudice pursuant to Rule 41(b), North Dakota Rules of Civil Procedure.[1] At this time the trial court also issued a "summary"[2] judgment in the sum of $3,200 in favor of the Rudruds on their counterclaim. Willman appealed from these judgments.

Willman asserted that since the original termination of the primary five-year term of the original lease, the terms and conditions of the original lease, including the first refusal option, have been in full force and effect on a year-to-year basis. In support of his position that the lease was continued under the terms of the original lease, Willman pointed to § 47–16–06, North Dakota Century Code, which provides as follows:

"If a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rent from him, the parties are *presumed* to have renewed the hiring on the same terms and for the same time, not exceeding one year." [Emphasis added.]

However, this section only raises a disputable presumption that the lease was renewed on the same terms. *Foster v. National Tea Company*, 74 N.D. 37, 19 N.W.2d 760 (1945). Section 47–16–06, NDCC, contemplates the lessee remaining in possession under the original lease without any further activity, but here the letter of 27 April 1978 from Harty Company to Willman either modified or terminated any prior lease agreement.

In this respect the trial court entered the following specific findings of fact which, in essence, relate that the right of first refusal terminated on 1 May 1978:

"4. The termination date of the four written instruments which initially controlled and governed plaintiff's leasing was May 1, 1976. At that proximate time, the plaintiff and the Harty Company, defendant, mutually agreed to continue plaintiff's leasing on the same terms, except for two modifications. The modifications were an increase in rent and a specific term of one year. Two letters summarize this mutual agreement to continue plaintiff's leasing with these modifications. (Plaintiff's Exhibits Nos. 12 and 13).

"6. After May 1, 1977, the parties mutually agreed by their conduct to continue plaintiff's leasing on the same provisions for an additional one year term.

---

1. Rule 41(b), North Dakota Rules of Civil Procedure, provides as follows:

   "(b) Involuntary Dismissal—Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

2. The record does not disclose that a motion for summary judgment under the provisions of Rule 56, North Dakota Rules of Civil Procedure, was made. Summary judgment in this instance is a misnomer.

"7. Plaintiff's leasing, as continued after May 1, 1977, which included the provision providing for his preferential right to purchase all of the above described real property, terminated on May 1, 1978, at the end of the one year agreed upon term.

"8. Immediately prior to the termination of this last one year term, the Harty Company, defendant, informed plaintiff by letter (Plaintiff Exhibit No. 11) that there would be no continuance of the terminating leasing on the same provisions. Plaintiff was informed that a holding over and payment of rent could only be conditioned on a continued leasing that did not include provisions for a first refusal option and a one year term.

"9. Plaintiff's holding over after May 1, 1978, and the payment and acceptance of rent, effectuated a month to month tenancy. A provision for plaintiff's preferential right to purchase all of the above described real property was not part of this tenancy, and no agreement containing such a right was in existence or was binding between plaintiff and the Harty Company, defendant, after May 1, 1978."

■ The findings of fact, which the trial judge must make when he sustains a defendant's Rule 41(b), NDRCivP, motion, and renders judgment on the merits will not be set aside on appeal unless clearly erroneous. *Rutledge v. Electric Hose and Rubber Company*, 511 F.2d 668 (9th Cir. 1975); *Ash v. Hobart Manufacturing Company*, 483 F.2d 289 (6th Cir. 1973); see, 5 Moore's Federal Practice (1981) ¶ 41.13(4), page 41–196. Our review of the record reflects that these findings of facts made by the trial judge are supported by substantial evidence and are not clearly erroneous. Rule 52(a), NDRCivP.

■ After construing the law and these facts in the light most favorable to Willman, as required by *Buettner v. Nostdahl*, 204 N.W.2d 187 (N.D.1973), and *Thompson v. Nettum*, 163 N.W.2d 91 (N.D.1968), we conclude the district court did not err in granting the motion to dismiss Willman's complaint with prejudice pursuant to Rule 41(b), NDRCivP.

We also believe the use of the term "summary" judgment by the district court in granting judgment in favor of the Rudruds on their counterclaim was a misnomer.

■ The district court made several findings of fact relative to the rent increase by the Rudruds. Whenever findings of facts are made instead of a mere recitation of undisputed facts, summary judgment is inappropriate. *Albers v. Nodak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977). In this instance it is apparent that the district court relied on testimony and exhibits presented during Willman's case in chief to reach its decision. Based on this, we believe the judgment was in reality a result of a bench trial, and we will treat it as such.

■ Two exhibits were received and Willman testified on cross-examination concerning the failure to pay the rental increase. One of the exhibits was a letter from the Rudruds to Willman dated 28 November 1978 which informed Willman of the increase in rent on 1 January 1979. The other exhibit was a letter from Willman to the Rudruds dated 3 January 1979 which, in substance, acknowledged receipt of the Rudruds' letter informing him of the increase in rent and stating that Willman would not pay the increase.

Based on this evidence, we conclude that although the summary judgment label was improper, the trial court did not err in finding the Rudruds lawfully notified Willman in writing of the rental increase.[3] Section 47–16–07, NDCC.

Accordingly, for reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

---

**3.** At the time this appeal was taken, the judgment on the counterclaim had been satisfied.