**VERMEER INDUSTRIAL OF NORTH DAKOTA, Plaintiff and Appellee,**

v.

**Don BACHMEIER, Defendant and Appellant,**

and

**Lance Bachmeier, Defendant.**

**Civ. No. 910348.**

Supreme Court of North Dakota.

June 25, 1992.

Michael J. Maus (argued), of Howe, Hardy, Galloway & Maus, PC, Dickinson, for plaintiff and appellee.

Daniel J. Chapman (argued), of Chapman & Chapman, Bismarck, for defendant and appellant.

MESCHKE, Justice.

Don Bachmeier appeals from a county court judgment awarding Vermeer Industrial of North Dakota [Vermeer] $5,740.92 plus interest, and from an order denying his NDRCivP 60(b) motion for relief from the judgment. We affirm.

On June 10, 1988, Vermeer sold and delivered to Don a used trencher for $22,682.50. Don, who ran an excavating business, gave Vermeer's salesman, Frank Carlson, a check for $20,000. The sales slip stated: "30 day warranty 50% on parts and labor...." Another notation on the slip said that the balance would be paid after the trencher had gone "through our shop." The check was later returned to Vermeer, marked "Refer to maker."

After Carlson contacted Don about the check, Don said that he wanted to change the paperwork to show that his 14 year-old son, Lance Bachmeier, was the owner of the machine. Carlson testified that "[t]hey wanted it written in Lance's name. I said he's a minor. I could not do that. It would have to be jointly." On June 21, 1988, a new sales slip was made out stating that the trencher was "sold to 80% Lance Bachmeier & 20% Don Bachmeier." Carlson received a $12,000 check from Lance and a $5,000 check from Don to apply toward the purchase price. The new slip, signed by both Don and Lance, stated that the balance would be due "after unit has gone through our shop...."

Don and Lance did not return the trencher to Vermeer for repairs and did not pay the balance due. According to Vermeer, Don and Lance refused to allow Vermeer to perform the agreed repair or warranty work on the trencher. According to Don

and Lance, the trencher was not "field-ready" when it was delivered and they incurred considerable expense in making the machine workable. They also contended that they did not take it to Vermeer's shop because the shop did not have the necessary parts. The record shows that Don and Lance earned more than $19,000 through the use of the trencher.

Vermeer sued Don and Lance in county court seeking $5,740.92, the balance allegedly owed on the trencher. Don and Lance filed counterclaims. In their first counterclaim, Don and Lance asserted that Vermeer misrepresented the condition of the trencher and sought $3,959.13 for parts they had to purchase to repair the machine. They also sought an unspecified amount of damages to "be demonstrated at the time of trial" for further repairs, labor, and "business losses" caused by the trencher. They also asserted that Vermeer's conduct was fraudulent and sought an unspecified amount of exemplary damages. In the second counterclaim, Lance asserted that he was entitled to disaffirm the contract. Lance sought damages in "an amount equal to the purchase price of the trencher, together with the costs of the repairs paid out with reference to said piece of machinery."

After a bench trial, the trial court determined that the defendants' counterclaims exceeded the $10,000 county court jurisdictional limit and, because there was no request that the case be transferred to district court, ordered that the counterclaims be stricken pursuant to NDCC 27–07.1–33. The court determined that the trencher was sold with a warranty and that "Vermeer was willing to perform under the agreement, but the Defendants prevented Vermeer from checking the trencher and doing any necessary repairs and warranty work." The court determined that the balance due on the trencher had not been paid by either Don or Lance, but that Lance was not liable because he was entitled to disaffirm the contract pursuant to NDCC 14–10–11. The court determined, however, that Don "was a joint purchaser and owner of the

trencher" and entered judgment against him for the balance due plus interest.

After entry of judgment, Don filed a NDRCivP 60(b) motion for relief from the judgment based on "newly-discovered evidence." Don asserted that the case should be dismissed because Vermeer "is not incorporated and is not, therefore, a 'person' with standing to sue in the Courts of North Dakota." The trial court denied the motion. Don has appealed from the judgment and from the order denying his Rule 60(b) motion.

■ Don asserts that the trial court erred in refusing to grant his Rule 60(b) motion for relief from the judgment because of "lack of the legal entity of the Plaintiff." Apparently, Vermeer is a sole proprietorship owned by Ambrose Hoff, who was not named as a plaintiff in this action. Don asserts that this defect is jurisdictional and renders the judgment void. We disagree. Lack of capacity to sue is not a jurisdictional defect, and a failure to raise the issue during the proceedings results in a waiver of the defense. NDRCivP 9(a); *Judson Pto v. New Salem School Board*, 262 N.W.2d 502, 504–505 (N.D. 1978); 2A *Moore's Federal Practice* ¶ 9.02, at p. 9–13 (2d ed. 1991). The trial court did not err in refusing to grant Don's motion for relief from the judgment.

■ Don asserts that the trial court erred in failing to grant judgment in his favor on his counterclaim under NDRCivP 8(d) because Vermeer never replied to the counterclaim. As we noted, however, the trial court determined that the counterclaims sought damages which exceeded the county court jurisdictional limit, and because no request was made to transfer the case to district court, the counterclaims were stricken. The relevant inquiry here is whether the trial court properly struck the counterclaims.

The pertinent part of NDCC 27–07.1–33 directs:

*Procedure permitting pleading of cross-claims or counterclaims in excess of jurisdiction of county courts.* In all civil actions instituted in a county court a defendant has the right to plead a cross-claim or a counterclaim, compulsory or permissive, in excess of the jurisdiction of the court. When the amount in controversy measured by the value of the relief sought in either a cross-claim or counterclaim exceeds ten thousand dollars or asks for affirmative equitable relief, the county court shall proceed no further with a determination of the rights of the parties provided that the pleading in excess of jurisdiction is accompanied by a motion requesting that the case be transferred to the district court of the same county as the court from which the transfer is requested.... In the absence of a motion the cross-claim or counterclaim must be stricken and the case must proceed as though no counterclaim or cross-claim had been pleaded.

Absent a motion for transfer to district court, a counterclaim in excess of the jurisdiction of the county court "must be stricken."

Lance's counterclaim, seeking "the purchase price of the trencher, together with the costs of the repairs," was properly stricken. The purchase price alone exceeded $20,000. Don asserts that the other counterclaim was improperly stricken. That counterclaim sought an unspecified amount of damages for labor and repairs to the trencher, unspecified damages to their excavating business, and an unspecified amount of exemplary damages. The only stated amount in this counterclaim seeks $3,959.13 "in parts for repair of the said trencher."

■ When the amount in controversy is not clear from the face of the complaint, a court may resort to other materials in making its determination of the actual amount in controversy. *Cf.* 1 *Moore's Federal Practice* ¶ 0.92[1], at p. 840 (2d ed. 1992) [For purposes of federal court jurisdiction, "most courts assess the amount in controversy on the basis of the pleadings, affidavits and 'discovery type' evidence."] Don, when questioned about his answers to interrogatories in a pretrial deposition, stated that he and his business lost $9,000 in

profits on one job he was unable to take because of trouble with the trencher. This amount, added to the $3,959.13 sought for repair parts, clearly exceeded the $10,000 jurisdictional limit of the county court. The pretrial record in this case supports the trial court's determination that both counterclaims exceeded the jurisdictional limit. We therefore conclude that the trial court did not err in striking both counterclaims.

 Don asserts that the trial court erred in holding him jointly liable for the balance due on the contract because the second sales slip stated that the trencher was "sold to 80% Lance Bachmeier & 20% Don Bachmeier." We disagree.

NDCC 9-01-04 declares:

*Joint and several contracts.* A promise is presumed to be joint and several when:

1. All the parties thereto receive some benefit from the consideration, whether past or present;

2. It is made in the singular number but executed by several persons.

Both Lance and Don signed the acknowledgment on the sales slip that the trencher had been received by them.

 Having received the trencher and having earned more than $19,000 from its use, Don and Lance clearly received "some benefit." It is not clear what is meant by the notation that the trencher was "sold to 80% Lance Bachmeier & 20% Don Bachmeier." But generally,

[w]here the language of the contract indicates that the parties bound themselves jointly to pay for the subject of the contract, the fact that words indicative of the proportional part of the subject matter which each of such parties was to take were set against the name of each does not change the construction of the contract or in any way affect their joint liability. Such words do not sufficiently show an intention to limit the liability of each of such parties to his proportion of the subject matter and therefore, so far as the opposite party is concerned, cannot control the general language used in the contract.

17 Am.Jur.2d *Contracts* § 429, at p. 453 (1991). *See also* 17A C.J.S. *Contracts* § 355 (1963). Moreover, to the extent that the contract is ambiguous about whether the parties intended payment to be a joint obligation of Don and Lance, Carlson testified that he told Don that "[i]t would have to be jointly" because Lance was a minor. We conclude that the trial court did not err in determining that Don was a "joint purchaser and owner of the trencher" and in holding him liable to Vermeer for the balance due.

The judgment and order are affirmed.

ERICKSTAD, C.J., and JOHNSON, VANDE WALLE and LEVINE, JJ., concur.