2015 ND 123

**Robin D. FUNKE and Kathleen M. Funke, Plaintiffs and Appellees**

v.

**AGGREGATE CONSTRUCTION, INC., Defendant and Appellant**

v.

**Robert Cogdill, Crossclaim Defendant.**

No. 20140052.

Supreme Court of North Dakota.

May 27, 2015.

Rehearing Denied July 1, 2015.

858

Richard P. Olson (argued) and Andrew T. Forward (appeared), Minot, N.D., for plaintiffs and appellees.

Ronald G. Schmidt, Rapid City, S.D., for defendant and appellant and crossclaim defendant.

VANDE WALLE, Chief Justice.

[¶ 1] Aggregate Construction, Inc., appealed from a summary judgment declaring leases of shop and office property to Aggregate were terminated on December 31, 2011, and dismissing Aggregate's counterclaims against Robin and Kathleen Funke. We conclude the district court did not err in construing the leases to effectuate a termination on December 31, 2011, and in dismissing Aggregate's counterclaims. We affirm.

I

[¶ 2] In 1983, Robin Funke and Robert Cogdill incorporated Aggregate, with each individual owning 50 percent of its stock. Funke was Aggregate's president and Cogdill was secretary and treasurer. On January 1, 2008, Cogdill purchased Robin Funke's shares of stock in Aggregate and became the owner of all of Aggregate's outstanding stock and assets. On January 4, 2008, Cogdill, as president of Aggregate, executed separate commercial leases for office property and shop property on land owned by Robin and Kathleen Funke. With the exception of property legal descriptions, the leases' provisions are identical. The lease term was from January 1, 2008, to December 31, 2008, and included specific language in paragraph 12 regarding an option to renew. Aggregate renewed the leases in 2009, 2010, and 2011 by holding over as allowed under paragraph 18 of the lease.

[¶ 3] In August 2011, the Funkes' attorney sent Aggregate a letter stating the leases were terminated effective December 31, 2011. In September 2011, Aggregate responded by sending the Funkes notice that Aggregate was renewing the leases for 2012 under the renewal language in paragraph 12 and that lease payments would be increased three percent under the language of that provision. Aggregate's notice also stated the leases had been renewed under the paragraph for holding over "for all relevant lease years including the present year." In December 2011, the Funkes sued Aggregate, seeking a declaration that the leases were terminated effective December 31, 2011.

[¶ 4] Aggregate answered, denying the leases had been terminated. Aggregate also counterclaimed, seeking the equitable cancellation or rescission of a deed that had previously transferred title to specific real property ("Lot 3") from Aggregate to the Funkes in 2006. Aggregate alternatively sought restitution for the unauthorized expenditure of more than $82,000 in corporate funds for unauthorized improvements and construction of a shop building addition on the Funkes' land ("Lot 1") in 1998. Aggregate also sought a refund of the increased rent paid for the occupation and use of the leased premises under Aggregate's misconception that Funke had individually paid for the improvements and construction to Lot 1. Both the Funkes and Aggregate moved for summary judgment. In October 2012 the district court granted the Funkes summary judgment declaring the lease for the shop property had terminated on December 31, 2011, under the plain language of the relevant lease provisions. The court did not address the lease for the office property at this time.

[¶ 5] In February 2013, the Funkes moved for appointment of a special master to determine rent and also moved to join

Cogdill as a defendant. In May 2013, the court denied the Funkes' motion for a special master but granted their motion to join Cogdill as a defendant. The Funkes thereafter crossclaimed against Cogdill, essentially alleging that if the court determined Aggregate was the owner of the disputed property, Robin Funke's Aggregate shares had been undervalued and Cogdill was unjustly enriched when he purchased Robin Funke's shares of Aggregate.

[¶ 6] In December 2013, the district court granted the Funkes summary judgment, declaring the lease on the office property had also been terminated effective December 31, 2011. The court specifically stated that Aggregate's counterclaim regarding the Funkes' ownership of the property remained pending. In January 2014, the district court entered an order granting the Funkes summary judgment and dismissing Aggregate's counterclaims as a matter of law. A consistent judgment was subsequently entered on January 28, 2014.

## II

[¶ 7] We initially address the Funkes' motion to dismiss Aggregate's appeal.

[¶ 8] "The right to appeal is jurisdictional," *Kouba v. Febco, Inc.*, 1998 ND 171, ¶ 7, 583 N.W.2d 810, and when an order or judgment is not appealable, this Court will dismiss the appeal. *Gasic v. Bosworth*, 2014 ND 85, ¶ 4, 845 N.W.2d 306. "Only judgments and decrees which constitute a final judgment of the rights of the parties and certain orders enumerated by statute are appealable." *State v. North Dakota Ins. Reserve Fund*, 2012 ND 216, ¶ 4, 822 N.W.2d 38. Under N.D.R.Civ.P. 54(b), to be considered final, a judgment must dispose of all claims or the district court must direct entry of a final partial judgment if the court properly expressly

determines "there is no just reason for delay." While memorandum opinions and orders, such as an order for judgment, are generally not appealable, an attempted appeal from an order for judgment will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Lund v. Lund*, 2014 ND 133, ¶ 7, 848 N.W.2d 266; *Koehler v. Cnty. of Grand Forks*, 2003 ND 44, ¶ 6 n. 1, 658 N.W.2d 741. We have also said that an order intended to be a final judgment will be treated as an appeal from a final judgment. *Kaiser v. State*, 417 N.W.2d 175, 177 (N.D.1987).

### A

[¶ 9] The Funkes argue the December 2013 order granting summary judgment on the office lease was not a final order or judgment under N.D.R.Civ.P. 54(b) and no judgment was entered on that order. We disagree.

[¶ 10] The Funkes sued Aggregate under N.D.C.C. ch. 32-23, seeking a declaration that Aggregate's leases for the shop and the office property had terminated on December 31, 2011. Under N.D.C.C. § 32-23-01, a "court of record within its jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." We have further discussed the relief available under N.D.C.C. ch. 32-23:

> Section 32-23-02, N.D.C.C., says, "Any person interested under a ... written contract ... or whose rights, status, or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the ... contract ... and may obtain a declaration of rights, status, or other legal relations thereunder." Under the statutory provisions authorizing a declaratory judgment action, "[a] contract may be construed either before

or after there has been a breach thereof." N.D.C.C. § 32–23–03. A court may refuse to render a declaratory judgment if the judgment would not terminate the uncertainty giving rise to the controversy. N.D.C.C. § 32–23–06. When declaratory relief is sought, all persons having or claiming any interest that would be affected by the declaration must be made parties, and a declaration may not prejudice the rights of persons not named as parties to the proceeding. N.D.C.C. § 32–23–11. The provisions authorizing declaratory relief are remedial and are to be construed and administered liberally to afford relief from uncertainty about rights, status, and other legal relations. N.D.C.C. § 32–23–12. *City of Harwood v. The City of Reiles Acres,* 2015 ND 33, ¶ 11, 859 N.W.2d 13. Section 32–23–01, N.D.C.C., provides that, in entering a declaratory judgment under N.D.C.C. ch. 32–23, "[t]he declaration may be either affirmative or negative in form and effect, and *such declaration shall have the force and effect of a final judgment or decree.*" (Emphasis added.) *See also* N.D.C.C. § 32–23–07 ("All orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments, and decrees.").

[¶ 11] In its October 2012 order, the district court declared the lease for the shop property terminated in December 2011 and stated the order did not dispose of Aggregate's counterclaim about ownership of the property. This order did not address the office property. In its December 2013 order, the court declared the lease for the office property also terminated in December 2011 and again stated the counterclaim about ownership of the shop property remained pending. In its January 2014 order, the district court incorporated its earlier orders declaring the leases terminated and again granted summary judgment to the Funkes, dismissing Aggregate's counterclaims. The court also ordered judgment to be entered on that order, and a judgment was entered. We conclude the court's January 2014 order and subsequent consistent judgment were intended to be a final judgment on all proceedings relating to the Funkes' action for declaratory relief. *Cf. Kaiser,* 417 N.W.2d at 177 (considering merits of appeal when district court intended order to have effect of final judgment).

B

[¶ 12] The Funkes argue Aggregate's appeal is premature and the judgment is not final. They assert the district court has not addressed the issue of the amount of rental payments due and owing, which they raised in their February 2013 motion to appoint a special master and in their motion before the December 2013 order granting summary judgment. The Funkes assert they intend to renew their motion to appoint a special master and request reconsideration of the court's post-judgment denial of their motion to remove or evict Aggregate from the property. They contend allowing this appeal will result in piecemeal determinations and the rental payments are clearly not "supplemental further relief" under N.D.C.C. § 32–23–08. Aggregate responds, however, that N.D.C.C. § 32–23–08 bars any supplemental further relief for eviction or rent in this action as a matter of law. Aggregate argues the Funkes' complaint was limited to declaratory judgment regarding the termination of the leases and no other relief was requested.

[¶ 13] Under N.D.C.C. § 32–23–08, the court may grant "supplemental relief" after entry of a declaratory judgment when "necessary and proper":

*Further relief based on a declaratory judgment or decree* may be granted

whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is deemed sufficient, the court, on reasonable notice, shall require any adverse party *whose rights have been adjudicated* by the declaratory judgment or decree to show cause why further relief should not be granted forthwith.

(Emphasis added.)

[¶ 14] Under similar statutes, courts have recognized this provision contemplates a prevailing party in a declaratory judgment may seek further relief in the form of monetary damages or other coercive or injunctive relief. *See, e.g., Noatex Corp. v. King Const. of Houston, L.L.C.,* 732 F.3d 479, 487 (5th Cir.2013); *R.D. Offutt Co. v. Lexington Ins. Co.,* 494 F.3d 668, 676 n. 3 (8th Cir.2007); *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.,* 843 F.2d 546, 549 (D.C.Cir.1988); *Berman v. Yarbrough,* 267 P.3d 905, 911 (Utah 2011); *Ken Leahy Const., Inc. v. Cascade General, Inc.,* 329 Or. 566, 994 P.2d 112, 117–18 (1999); *see also* 22A Am. Jur. 2d *Declaratory Judgments* §§ 253, 263 (2013). The supplemental relief provision applies when the additional relief is requested after a declaratory judgment has been granted to supplement or enforce the declaratory judgment. *State ex rel. Bardacke v. New Mexico Fed. Sav. & Loan Ass'n,* 102 N.M. 673, 699 P.2d 604, 606 (1985). The provision does not apply, however, when the nondeclaratory supplemental relief is requested in the original complaint together with the declaratory relief. *Bardacke,* at 606; *see also* 22A Am. Jur. 2d *Declaratory Judgments* § 256 (2013).

[¶ 15] Courts have held that a motion requesting "further relief" based on a declaration of rights is not directed against the original judgment, but rather is incidental to the judgment and it "does not delay or postpone the finality of the issues originally decided so as to render the original decision nonfinal and nonappealable." *Universal Underwriters Ins. Co. v. Judge & James, Ltd.,* 372 Ill.App.3d 372, 310 Ill.Dec. 207, 865 N.E.2d 531, 541 (2007) (quoting *Djikas v. Grafft,* 344 Ill.App.3d 1, 279 Ill.Dec. 84, 799 N.E.2d 887, 896 (2003)); *see also In re State,* 159 S.W.3d 203, 207 (Tex.Ct.App.2005) ("A number of federal court decisions have made it clear that a trial court has jurisdiction to consider a request for 'further relief' under the federal declaratory judgment act at any time, even after a completed appeal." (citations omitted)); *but see Principal Mut. Life Ins. Co. v. Straus,* 116 N.M. 412, 863 P.2d 447, 448 (1993) ("A judgment or order that reserves the issue of assessment of damages for future determination is not a final judgment for purposes of appeal.").

[¶ 16] Here, the Funkes did not specifically request monetary damages or a determination of the rent due and owing in their original complaint seeking a declaratory judgment on the leases. Their complaint only requested the district court to award "such other and further relief" the court deems appropriate. In denying the Funkes' motion to appoint a special master, the district court held it was "unnecessary to appoint a special master at this time." Further, in the subsequent orders granting summary judgment, the court did not specifically reserve the issue of rent due and owing or any monetary damages for a future determination. We therefore conclude the Funkes' request for rents due and owing under the leases seeks supplemental further relief based on the declaratory judgment under N.D.C.C. § 32–23–08, and does not render the district court's January 2014 judgment either nonfinal or nonappealable.

C

[¶ 17] The Funkes also assert the January 2014 order and judgment did not

affirmatively dispose of their crossclaim against Cogdill and contend Aggregate misstates the order when it asserts the order and judgment rendered the crossclaim moot. Although the district court granted the Funkes' motion to join Cogdill as a defendant, the Funkes captioned their claim against Cogdill, who was not an original party to the action, as a crossclaim despite the fact he was not a named party to the action.

[¶ 18] Rule 13(g) and (h), N.D.R.Civ.P., governs asserting a crossclaim against a coparty and joining a person as a party to a crossclaim, respectively. "[W]e have recognized that federal court interpretations of substantially similar federal rules may be highly persuasive in construing our rules." *Perius v. Nodak Mut. Ins. Co.,* 2010 ND 80, ¶ 20, 782 N.W.2d 355. Courts have said it is well-settled that Fed. R.Civ.P. 13(h) cannot be used to assert a counterclaim or crossclaim solely against an unnamed party. *See, e.g., AllTech Commc'ns, LLC v. Brothers,* 601 F.Supp.2d 1255, 1260–61 (N.D.Okla.2008); *see also F.D.I.C. v. Bathgate,* 27 F.3d 850, 873 (3d Cir.1994); *Brown v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.,* 85 F.R.D. 328, 333 (D.Mich.1980); *Lund v. Eight Judicial Dist. Court,* 255 P.3d 280, 283 (Nev.2011); *White Sands Grp., L.L.C. v. PRS II, LLC,* 998 So.2d 1042, 1056 (Ala.2008); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1435 (3d ed.2010) ("This means that a counterclaim or crossclaim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party."). Under those decisions, the Funkes improperly designated Cogdill as a crossclaim defendant in alleging their claim for unjust enrichment.

[¶ 19] Nonetheless, even if properly designated as a crossclaim, in *Luithle v. Taverna,* 214 N.W.2d 117, 120 (N.D.1973), this Court held that final, appealable judgments were entered after summary judgment dismissal of a plaintiff's claim that also rendered the defendant's crossclaim moot. *Id.* This Court held the crossclaim became moot and a Rule 54(b) certification would be fruitless and unnecessary, because it was so completely "incidental to and dependent" on the plaintiff's claim there could be no recovery on the crossclaim after the plaintiff's claim was dismissed. *Id.* In *Luithle,* the judgment dismissing the plaintiff's claim effectively adjudicated all of the claims before the court, including the defendant's crossclaim. *Id.*

[¶ 20] Similarly, in this case, the Funkes' claim against Cogdill for unjust enrichment was completely incidental to and dependent on Aggregate's counterclaim against the Funkes. Their claim against Cogdill alleged that if the court held Aggregate was the owner of the disputed real property, Robin Funke's shares of Aggregate would have been worth more than what Cogdill had paid and Cogdill was unjustly enriched when he purchased those shares. We conclude the January 2014 judgment dismissing Aggregate's counterclaim against the Funkes also effectively dismissed the Funkes' claim against Cogdill.

[¶ 21] Based on the foregoing, we conclude Aggregate's appeal is from a final, appealable judgment, and we address the merits of the appeal.

III

[¶ 22] Aggregate argues the district court erred in granting summary judgment, declaring the leases terminated effective December 31, 2011, and erred in

granting summary judgment dismissing Aggregate's counterclaims.

[¶ 23] Our standard of review of a district court's decision granting summary judgment under N.D.R.Civ.P. 56 is well-established:

> Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal[,] this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

*Rutherford v. BNSF Ry. Co.*, 2009 ND 88, ¶ 9, 765 N.W.2d 705 (quoting *Hopfauf v. Hieb*, 2006 ND 72, ¶ 6, 712 N.W.2d 333). We have also explained that fact issues may become issues of law when reasonable persons could reach only one conclusion from the facts. *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357.

## IV

[¶ 24] Aggregate argues the district court erred in granting summary judgment to the Funkes, declaring the leases had terminated effective December 31, 2011.

[¶ 25] We apply the basic rules of contract construction to leases in deciding the scope and effect of provisions within a lease. *See Entzel v. Moritz Sport & Marine*, 2014 ND 12, ¶ 8, 841 N.W.2d 774; *Langer v. Bartholomay*, 2008 ND 40, ¶ 12, 745 N.W.2d 649.

Contracts are construed to give effect to the parties' mutual intent at the time the contract was formed, and if possible, we look to the writing alone to determine the parties' intent. Interpretation of a contract is a question of law, if the parties' intent can be determined from the language of the contract alone. Whether a contract is ambiguous is a question of law, which we review independently. A contract is ambiguous if rational arguments can be made for different interpretations. If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the terms of the contract and the parties' intent become questions of fact.

*Langer*, at ¶ 12. "Words 'are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage.'" *Entzel*, at ¶ 8 (quoting N.D.C.C. § 9-07-09). "A lease is generally construed most strongly against the lessor." *Langer*, at ¶ 12.

[¶ 26] The relevant provisions of the leases [1] at issue in this case state:

> THIS LEASE AGREEMENT is made this 1st day of January, 2008, by and between Funke Properties, LLC of Minot, North Dakota, hereinafter called Landlord, and Aggregate Construction, Inc. of Minot, North Dakota, hereinafter called Tenant.

---

1. We note that the leases are executed in the name of Funke Properties, LLC, and the parties have not disputed the Funkes' right to pursue a declaratory judgment or raised any issue as to the failure to name Funke Properties as a party. *See* N.D.C.C. § 32-23-11. We have explained that "a failure to object to a party's standing in the trial court and on appeal results in a waiver of the issue." *Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau*, 2004 ND 60, ¶ 23, 676 N.W.2d 752; *see also Vermeer Indus. v. Bachmeier*, 486 N.W.2d 506, 508 (N.D.1992); *Judson PTO v. New Salem Sch. Bd.*, 262 N.W.2d 502, 505 (N.D.1978).

. . . .

1. *Term.* The term of this lease is a period of one year, commencing on the 1st day of January, 2008, and ending on the 31st day of December, 2008, subject to renewal as hereinafter provided.

. . . .

12. *Option to Renew.* Tenant shall have the option to renew this lease for an additional term of one year after the expiration of the initial term, exercisable by giving a written notice of intent to extend the lease for such additional term to Landlord at least 60 days prior to the expiration of the initial term. If this option to renew is exercised, the renewed lease shall be upon all the terms and covenants as the lease for the initial term, including the option to renew, except that any renewals shall be subject to a three percent increase in the rent amount.

. . . .

17. *Termination.* Tenant will quit and deliver quiet possession of the premises to Landlord at the end of the term of this lease, or any previous termination thereof for any cause, . . .

18. *Holding Over.* If the Tenant remains in possession of the premises after the expiration of this lease, and the Landlord accepts rent from him, the lease shall be deemed renewed.

. . . .

[¶ 27] Aggregate argues that under the plain language of paragraph 18 of the lease, the entirety of the lease is renewed by holding over, including the renewal option under paragraph 12. Aggregate contends that when Aggregate renewed the lease by holding over under paragraph 18 in 2009, 2010, and 2011, these renewals were "hybrid" consistent with both paragraphs 12 and 18. Aggregate asserts the rent was increased by three percent under paragraph 12 for each of the three years. Aggregate argues that Funkes accepted the increased rental payments for those years without objection or comment and is estopped from arguing the entire lease, including paragraph 12, was not renewed. Aggregate also contends the lease renewed as a matter of law under N.D.C.C. § 47–16–06, and the district court erred in concluding that Aggregate's position would construe the lease as a perpetual lease.

[¶ 28] The Funkes contend, however, that the "option to renew" only continued as a term of the lease if the lease had been initially renewed under paragraph 12. They argue that under paragraph 18 the lease was "deemed renewed" when the tenant remains in possession and the landlord accepts rent, but unlike paragraph 12, paragraph 18 does not explicitly state the "option to renew" will continue as a term of the lease. They contend Aggregate misinterprets paragraph 18 in asserting that by holding over the lease continued under the same terms, including the option to renew. The Funkes also argue the lease was not renewed as a matter of law under N.D.C.C. § 47–16–06, and lease paragraph 18 only creates a disputable presumption that the lease was renewed on the same terms.

[¶ 29] Section 47–16–06, N.D.C.C., specifically provides when a lease is presumed renewed, stating in part:

> If a lessee of real property remains in possession of the real property after the expiration of the lease and the lessor accepts rent from the lessee, *the parties are presumed to have renewed the lease on the same terms and for the same time, not exceeding one year.*

(Emphasis added.)

[¶ 30] Although Aggregate suggests its leases were renewed as a matter of law

under this statute, "our Court has held section 47–16–06, N.D.C.C., does not automatically renew a lease for up to one year when a tenant holds over and a landlord accepts a rent payment; rather, the 'section only raises a disputable presumption that the lease was renewed on the same terms.'" *Working Capital # 1, LLC v. Quality Auto Body, Inc.*, 2012 ND 115, ¶ 8, 817 N.W.2d 346 (quoting *Willman v. Harty Co.*, 305 N.W.2d 909, 911 (N.D.1981)).

[¶ 31] Here, in construing the relevant lease provisions, the district court specifically stated the lease at issue did not provide for "continual renewals." The court was responding to Aggregate's contention that it was entitled to renew the lease under either paragraph 12 or paragraph 18 in a continuous manner as long as it does not default. The court construed the lease to permit renewals, but instead relied on the lease termination clause found in paragraph 17. The court explained:

> Based on their interpretation of the lease, Aggregate argues there was no legal basis for the Funkes' August 24, 2011 letter of termination. The Court does not agree. Paragraph 17 of the lease states, in part, that "Tenant will quit and deliver quiet possession of the premises to Landlord at the end of the term of this lease, *or* any previous termination thereof for any cause ..." (emphasis added). Use of the disjunctive word "or" indicates an alternative between different things or actions. *Schwarz v. Gierke*, 2010 ND 166, ¶ 18, 788 N.W.2d 302. Applying that norm to the lease at issue in the case at bar, the lease may be terminated: (1) at the end of the term; or (2) by any previous termination for cause. By their August 24, 2011, letter, the Funkes were exercising their option to terminate the lease at the end of the one-year term on December 31, 2011.

[¶ 32] In reviewing the relevant lease provisions, we conclude the district court properly concluded the leases do not provide for "continual renewals" and that the "termination clause" in paragraph 17 must be considered in construing the lease as a whole. We further conclude the Funkes' August 2011 letter sent to Aggregate was effective to exercise their right to terminate the leases for any cause at the end of the one-year term. We therefore conclude the court did not err in granting the Funkes summary judgment, declaring the leases terminated effective December 31, 2011.

## V

[¶ 33] Aggregate argues the district court erred in granting summary judgment on its counterclaims because disputed material facts exist, including issues involving state of mind and equitable remedies.

## A

[¶ 34] Aggregate contends the district court erred in summarily dismissing its counterclaim for the unauthorized transfer of certain real property from the corporation, while Funke was an officer and director, to himself and his wife on the sole grounds of "ratification" as a matter of law.

[¶ 35] We have explained that "[a] corporation is an artificial person that must act through its agents." *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 11, 705 N.W.2d 836. "Generally, the knowledge of the board of directors, officers, or agents of a corporation is imputed to the corporation." *Employers Reinsurance Corp. v. Landmark*, 547 N.W.2d 527, 535 (N.D.1996) (citing *Bourgois v. Montana–Dakota Util. Co.*, 466 N.W.2d 813, 817 (N.D.1991); *Federal Sav. & Loan Ins. Corp. v. Morque*, 372 N.W.2d 872, 876 (N.D.1985); N.D.C.C.

§ 3–03–05). The rule of imputed knowledge is not absolute, but subject to qualifications and exceptions. *See Landmark,* at 535.

[¶ 36] This Court has said that, to find the knowledge of corporate officers or agents, "one must look at the mind of the agent at the time of the transaction in regard to which notice or knowledge is sought to be imputed to the corporation." *Bourgois,* 466 N.W.2d at 817. Nonetheless, as the Wyoming Supreme Court discussed in *Lahnston v. Second Chance Ranch Co.,* 968 P.2d 32, 36 (Wyo.1998), there are circumstances in which a corporate officer's acts, which exceed the officer's authority at the time, may subsequently be considered ratified as a matter of law:

> If the officers of a corporation exceed their authority and the act is one that could have been authorized in the first instance by the board of directors, the act may be expressly or impliedly ratified and thus be rendered just as binding as if it had been authorized when done. 2A *Fletcher Cyclopedia of the Law of Private Corporations* §§ 752, 762 (1992); *Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109, 116–17 (Alaska 1990). Implied ratification of a previously unauthorized act may result from 1) accepting and retaining the benefits of the act, 2) silence, acquiescence, or failure to repudiate, or 3) *other affirmative acts showing an adoption of the act or contract. Fletcher Cyc. Corp., supra,* § 762, *Barnes v. Treece,* 15 Wash.App. 437, 549 P.2d 1152, 1157 (Wash.App.1976). Ratification requires full knowledge of all the material facts on the part of the corporate principal. *Fletcher Cyc. Corp., supra,* § 757; *see also Farmers' State Bank v. Haun,* 30 Wyo. 322, 346, 222 P. 45, 53 (1924). Although actual knowledge of the act is required, directors are held to know that

which they could have ascertained with slight diligence. *Haun,* 30 Wyo. at 349, 222 P. at 54–55. A director is chargeable with knowledge of those corporate affairs which it is his duty to know. *Id.,* 30 Wyo. at 349, 222 P. at 55. Whether or not ratification exists is a question of fact where more than one inference can be drawn from the evidence. *Fletcher Cyc. Corp., supra,* § 781; *Sea Lion Corp.,* 787 P.2d at 117–18. Whether the evidence is legally sufficient to establish ratification is a question of law for the court. *Fletcher Cyc. Corp., supra,* § 781. *Ratification occurs as a matter of law where reasonable persons could draw only one conclusion from the evidence. Fletcher Cyc. Corp., supra,* § 781; *Sea Lion Corp.,* 787 P.2d at 117–18.

(Emphasis added.)

[¶ 37] In January 2006, while president of Aggregate, Robin Funke executed a warranty deed on behalf of Aggregate conveying property including Lot 3 to the Funkes. The record indicates this deed was recorded with the county recorder. In its counterclaim, Aggregate alleged Robin Funke violated various provisions of the North Dakota Business Corporations Act, N.D.C.C. ch. 10–19.1. Aggregate alleged Funke breached N.D.C.C. § 10–19.1–51 by not obtaining an order or resolution of the board of directors for the sale of Lot 3 or for the use of corporate funds for the improvement of the shop building located on Lot 1 owned by the Funkes and that Robin Funke's actions constituted bad faith as a matter of law under N.D.C.C. §§ 10–19.1–50 and 10–19.1–53. Based on those allegations, Aggregate sought cancellation or rescission of the deed transferring title to Lot 3 as void or voidable or, alternatively, for restitution of the unauthorized expenditure of corporate funds for unauthorized improvements and con-

struction of the shop building addition on Lot 1.

[¶ 38] The district court held it was undisputed the sale of Lot 3 by the corporation was not authorized or approved in any of Aggregate's corporate minutes, but the parties disputed the legal effect of the failure to obtain corporate authority for the sale of Lot 3. The court concluded, however, that summary judgment for the Funkes was appropriate because the sale of Lot 3 had been ratified by the corporation as a matter of law. The court noted the "shop" lease, which was the subject of the court's October 2012 order included Lot 3 in the property description covered by the lease. This lease was executed on January 4, 2008, by Robin Funke, as president of Funke Properties, and Robert Cogdill, as president of Aggregate. The court concluded that because there was no dispute that Cogdill signed the "shop" lease in 2008, two years after the sale of Lot 3 to the Funkes, Cogdill's signature on that lease was a ratification of the prior sale of Lot 3 to the Funkes as a matter of law. The court also concluded that any bad faith in the conveyance was also waived when the sale was ratified.

[¶ 39] Aggregate argues the district court erred in reaching this conclusion because Cogdill claimed that at all relevant times he was totally unaware of where the various property lines existed on the various tracts of real estate Aggregate had purchased over the years. He testified by affidavit that he did not know at the time the leases were signed in January 2008 that Funke claimed to own all of the shop property including Lot 3. Cogdill testified Funke was the business partner and conducted and was responsible for all of Aggregate's business and financial affairs. Cogdill states that although Funke had designated Cogdill as Aggregate's Secretary/Treasurer, the designation was in name only. Cogdill further states that he spent very little time in the office over the course of a year and was usually out of the office for months at a time. Cogdill contends he placed his total trust in Funke for all of Aggregate's business and financial affairs.

[¶ 40] In resisting summary judgment, Aggregate essentially asserts that its officer, Cogdill, as secretary/treasurer in 2006 and as president in 2008, was unaware of the business and financial records of the corporation. While not specifically authorized in the corporate minutes, there is evidence that the transaction was recorded in Aggregate's financial records in a general journal transaction entry dated January 5, 2006, and that Aggregate's subsequent balance sheet no longer contained the land as an asset. Most important, however, is the 2008 lease for the shop property executed by Cogdill as president of Aggregate, in which Aggregate leased Lot 3 from the Funkes. Based on the undisputed facts, we conclude that reasonable people could reach only one conclusion and Aggregate has failed to raise a genuine issue of material fact about ratification. We therefore conclude the district court did not err in granting the Funkes summary judgment.

**B**

[¶ 41] Aggregate alternatively argues the district court erred in summarily dismissing its counterclaim for Funke's unauthorized use of corporate assets for the improvement of the shop building.

[¶ 42] In its counterclaim, Aggregate alleges that between January 14, 1998, and September 30, 1998, Funke spent approximately $70,837.88 of Aggregate funds without corporate authorization on services and materials on the shop building addition located on Lot 1, which is undisputedly owned by Funke. Aggregate also alleges

that Cogdill would not have agreed to an increase in rent Aggregate paid to Funke for the shop building, from $950 per month to $1,950 per month, had he been aware that corporate funds were used for the improvements.

[¶ 43] The district court concluded summary judgment was appropriate because, regardless of Cogdill's "professed ignorance" of the source of the funds used for the improvement of the shop property, Cogdill was Aggregate's secretary/treasurer and had a duty under N.D.C.C. § 10–19.1–53(3) regarding Aggregate's finances and expenditures and should have known the improvements were being funded by Aggregate. The court also concluded that Aggregate's claim was time-barred under either N.D.C.C. § 28–01–16, providing a six-year statute of limitations, or N.D.C.C. § 28–01–22, providing a ten-year statute of limitations, because Aggregate made the expenditures for the improvements in 1998, at least twelve years before this action was commenced.

[¶ 44] Generally, in applying a statute of limitations, determining when a cause of action accrues normally presents a question of fact; but, when the material facts are undisputed, the issue of whether a statute of limitations has run becomes a question of law. *Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, ¶ 13, 827 N.W.2d 533; *Johnson v. Hovland*, 2011 ND 64, ¶ 13, 795 N.W.2d 294. It is undisputed that the corporate expenditures at issue in Aggregate's counterclaim were made in 1998. Cogdill claims that he merely signed corporate records and financial documents when Funke asked and told him to do so and that he was not educated or experienced in business affairs and trusted Funke. Cogdill's assertions do not change the fact that the improvement expenditures were reflected in Aggregate's financial records.

[¶ 45] On this record, we conclude Aggregate has failed to establish a genuine issue of material fact as to when its claim accrued. We, therefore, conclude the district court did not err in determining Aggregate's counterclaim against the Funkes was time-barred as a matter of law.

## VI

[¶ 46] We have considered the parties' remaining issues and arguments and conclude that they are either unnecessary to address or without merit. We deny the parties' requests for attorney fees under N.D.R.App.P. 38. The orders and judgment are affirmed.

[¶ 47] DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.