2014 ND 12

**Laura Jean ENTZEL, Plaintiff, Appellant and Cross–Appellee**

v.

**MORITZ SPORT AND MARINE, Defendant, Appellee and Cross–Appellant.**

No. 20130157.

Supreme Court of North Dakota.

Jan. 17, 2014.

Scott A. Hager, Bismarck, ND, for plaintiff, appellant and cross-appellee.

Sean O. Smith, Bismarck, ND, for defendant, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Laura Jean Entzel appeals a district court opinion awarding her a partial refund of her prepaid rental fee and a district court order denying her request for attorney fees. We reverse the district court judgment's award of a refund to Entzel, because we hold the force majeure clause of the parties' contract relieved Moritz Sport and Marine ("Moritz") of liability for nonperformance and allocated the risk of loss to Entzel. We affirm the district court judgment's denial of Entzel's request for attorney fees, concluding Entzel was not a prevailing plaintiff in this case.

I

[¶ 2] On December 16, 2010, Entzel entered into a Boat Space Rental Agreement with Moritz. Entzel pre-paid Moritz $612 for use of a marina boat slip at Marina

Bay in Mandan from May 15, 2011 through October 1, 2011. Entzel chose not to use the slip at the start of the agreement period in May. Due to the threat of an impending flood along the Missouri River shoreline, the city of Mandan contacted Moritz and informed Moritz that the City wanted Moritz to take precautionary action. On May 26, 2011, Moritz notified Entzel that, because of potential flooding, all boats needed to be removed from the marina. Moritz never informed Entzel that her boat could be returned to the marina, and Entzel did not use the slip during the contract period. However, other customers of Moritz began to use their slips in the marina beginning mid-June 2011 until freeze in.

[¶ 3] Entzel sued Moritz in small claims court alleging breach of contract and seeking to recover the $612 slip rental fee. Moritz removed the action to district court, arguing a force majeure clause in the contract relieved Moritz from liability, and Entzel moved for attorney fees. Following a bench trial, the district court found that the parties' contract provided, in part:

10. The LANDLORD will not be responsible for delays in hauling, launching, winter lay-up or commissioning, occasioned by inclement weather or any other circumstances beyond its control.

(Hereinafter "paragraph 10"). The district court held "While Paragraph 10 of the written contract between the parties relieved Moritz of its responsibility to perform under the contract, it also excused Ms. Entzel from payment for services which were not provided." The district court found Entzel had use of the slip from May 15–26, and from mid-June to the end of the contract period. The district court found that, while Entzel was not notified of the latter availability, "it should have been obvious to her had she wanted to make use

of the slip at least by July 1." The court also found that, while Entzel rented the space because she wanted access to the river during the summer of 2011, access to the river was not guaranteed by the contract.

[¶ 4] The district court concluded that the fair value of the slip during the summer of 2011 was "two-thirds of the amount charged, or $408." It therefore ordered Moritz to refund Entzel the difference of $204. However, the district court found that "[b]oth parties prevailed to some extent," and the court therefore denied Entzel's motion for attorney fees.

II

[¶ 5] Entzel appeals from a district court opinion and a district court order. "An attempted appeal from an order for judgment will be treated as an appeal from a subsequently entered consistent judgment, if one exists." *Lund v. Lund*, 2011 ND 53, ¶ 5, 795 N.W.2d 318 (citations omitted). A consistent judgment was subsequently entered in this case. Therefore, we will treat Entzel's appeal as an appeal from that judgment.

[¶ 6] On appeal, Entzel argues Moritz breached the contract and the district court erred by not awarding the full amount of requested damages. In its cross-appeal, Moritz argues the court's finding that the force majeure clause in paragraph 10 relieved Moritz of its responsibility to perform under the contract should be affirmed and the court erred in awarding damages to Entzel. A trial court's findings of fact will not be reversed on appeal unless they are clearly erroneous. *Sanders v. Gravel Products, Inc.*, 2008 ND 161, ¶ 7, 755 N.W.2d 826 (citing *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 19, 736 N.W.2d 441). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no

evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Sanders*, 2008 ND 161, ¶ 7, 755 N.W.2d 826 (citing *Thompson v. Olson*, 2006 ND 54, ¶ 10, 711 N.W.2d 226). "Questions of law are fully reviewable on appeal." *Wilson v. Wilson*, 364 N.W.2d 113, 114 (N.D.1985) (citations omitted).

▮▮▮▮ [¶ 7] Breach of contract consists of "nonperformance of a contractual duty when it is due," and the issue of whether a party breached a contract is a finding of fact. *Sanders*, 2008 ND 161, ¶ 7, 755 N.W.2d 826 (citation omitted). Generally, this Court's cases have examined force majeure, also called "acts of God," in the context of liability for negligence and liability in cases where no clause was present in a contract. However, in this case, the force majeure clause was specifically written into the contract. *Black's Law Dictionary* defines a force majeure clause as "[a] contractual provision allocating the risk of loss if performance becomes impossible or impracticable, esp[ecially] as a result of an event or effect that the parties could not have anticipated or controlled." *Black's Law Dictionary* 718 (9th ed.2009). According to 30 *Williston on Contracts* § 77.31, at 364 (4th ed.2004), a force majeure clause is equivalent to an affirmative defense. "What types of events constitute *force majeure* depend on the specific language included in the clause itself." *Id.* "[N]ot every *force majeure* event need be beyond the parties' reasonable control to still qualify as an excuse." *Id.* at 367. "A party relying on a *force majeure* clause to excuse performance bears the burden of proving that the event was beyond its control and without its fault or negligence." *Id.* at 365.

[A] *force majeure* clause relieves one of liability only where nonperformance is due to causes beyond the control of a person who is performing under a contract. An express *force majeure* clause in a contract must be accompanied by proof that the failure to perform was proximately caused by a contingency and that, in spite of skill, diligence, and good faith on the promisor's part, performance remains impossible or unreasonably expensive.

*Id.* at 366.

▮▮▮▮ [¶ 8] In determining the scope and effects of a clause within a contract, we apply basic rules of contract construction to leases, and a lease is usually construed most strongly against the lessor. *Langer v. Bartholomay*, 2008 ND 40, ¶ 12, 745 N.W.2d 649 (citations omitted).

Contracts are construed to give effect to the parties' mutual intent at the time the contract was formed, and if possible, we look to the writing alone to determine the parties' intent. Interpretation of a contract is a question of law, if the parties' intent can be determined from the language of the contract alone.

*Id.* (citations omitted). Words "are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage . . . ." N.D.C.C. § 9-07-09.

Whether a contract is ambiguous is a question of law, which we review independently. A contract is ambiguous if rational arguments can be made for different interpretations. If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the terms of the contract and the parties' intent become questions of fact.

*Langer*, at ¶ 12 (citations omitted).

▮▮▮ [¶ 9] In this case, paragraph 10 stated: "The LANDLORD will not be re-

sponsible for delays in hauling, launching, winter lay-up or commissioning, occasioned by inclement weather or any other circumstances beyond its control." The district court found that Moritz's demand that Entzel remove her boat from the slip was due to the flooding of the Missouri River. The court found Entzel was not advised that she could return the boat, but at some point in June, other boats returned and were able to use the slips in a limited capacity for the rest of the contract period. The court therefore found that Entzel had use of the slip from May 15–26, and from mid-June to the end of the contract period. It found that, while Entzel was not notified of the latter availability, "it should have been obvious to her had she wanted to make use of the slip at least by July 1." The court found that, although Entzel rented the space because she wanted to have access to the river during the summer of 2011, access to the river was not guaranteed by the contract. The district court's findings were not clearly erroneous.

[¶10] To determine which party bears the risk of loss, we look to the provisions of the contract itself. *See Mayville–Portland Sch. Dist. No. 10 v. C.L. Linfoot Co.*, 261 N.W.2d 907, 912 (N.D. 1978). Paragraph 10 applies to delays in use of the slip that are beyond the control of the landlord. The delay in this case was due to the city of Mandan's instructions in light of the impending flood, was beyond Moritz's control, and was not due to Moritz's fault or negligence. Moritz's nonperformance due to the flood was not a breach of contract; it was excused by the force majeure clause in paragraph 10 of the contract.

[¶11] Paragraph 10 references only the landlord's relief from liability. According to the first sentence of the contract, the landlord refers to Marina Bay,

the marina owned by Moritz, while Entzel is referred to as the tenant. The plain language of paragraph 10 relieves Moritz of liability and does not relieve Entzel of liability for nonperformance due to the flood. Paragraph 10 is not at odds with the other provisions of the contract; several other paragraphs disclaim liability on behalf of Moritz, should alternative scenarios arise. Because the effect of a force majeure clause is to allocate the risk of loss, we conclude paragraph 10 had the effect of allocating the risk of loss to Entzel for nonperformance that occurred as a result of the flood.

[¶12] Although Moritz characterizes the judgment as an award of damages to Entzel, this is an incorrect characterization. Rather, the district court erroneously interpreted the contract to relieve Entzel of her payment obligation for the period the slip was unavailable. The contract does not provide such relief to Entzel. Rather than damages, the court incorrectly ordered Moritz to refund a portion of the prepaid rental fee. We reverse the district court judgment's award of a $204 refund to Entzel.

### III

[¶13] Entzel also argues the district court erred by finding Entzel was not a prevailing party and was not entitled to attorney fees. Under N.D.C.C. § 27–08.1–04, "[i]f the defendant elects to remove the action from small claims court to district court, the district court shall award attorney's fees to a prevailing plaintiff." Because we determined paragraph 10 was a force majeure clause which relieved Moritz from liability for nonperformance and allocated the risk of loss to Entzel, Entzel is not a prevailing plaintiff in this matter and is not entitled to attorney fees.

## IV

[¶ 14]  We reverse the district court judgment's award of a refund to Entzel. The district court judgment's denial of Entzel's request for attorney fees is affirmed.

[¶ 15]  GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, S.J., WILLIAM W. McLEES, D.J., and DANIEL J. CROTHERS, J., concur.

[¶ 16]  The Honorable WILLIAM W. McLEES, D.J., sitting in place of SANDSTROM, J., disqualified.

[¶ 17]  The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision.  Surrogate Judge MARY MUEHLEN MARING, sitting.