# IN THE SUPREME COURT

# STATE OF NORTH DAKOTA

2019 ND 228

Rhonda Pennington, Steven Nelson,
Donald Nelson, and Charlene Bjornson,           Plaintiffs and Appellants

v.

Continental Resources, Inc.,           Defendant and Appellee

No. 20190063

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Nathan A. Keever (argued), Grand Junction, CO, and Fintan L. Dooley (appeared), Bismarck, ND, for plaintiffs and appellants.

Spencer D. Ptacek (argued) and Lawrence Bender (on brief), Bismarck, ND, for defendant and appellee.

**Crothers, Justice.**

[¶1]     Rhonda Pennington, Steven Nelson, Donald Nelson, and Charlene Bjornson ("Plaintiffs") appeal a district court judgment ruling a "regulation and delay" provision in their oil and gas leases with Continental Resources extended the term of the leases.  We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2]     On October 25, 2011, the Plaintiffs executed oil and gas leases for property in McKenzie County.  Each lease term was three years with a lessee option to extend for an additional year.  The leases were assigned to Continental in September 2014, and it exercised the extension option.  The leases included a provision that the leases would not terminate if drilling operations were delayed by an inability to obtain permits.

[¶3]     In May 2012, Continental applied for a drilling permit on a 2,560-acre spacing unit that included the lands covered by the leases.  The 2,560 acres included lands inhabited by the Dakota Skipper butterfly, which is listed as threatened under the Endangered Species Act.  Continental could not begin drilling operations until receiving federal approval.  In August 2015, the U.S. Fish and Wildlife Service issued a biological opinion relating to the impact of Continental's proposed drilling on the Dakota Skipper.  On October 1, 2015, Continental proposed measures to minimize the impact of its operations on the Dakota Skipper.

[¶4]     On October 21, 2015, Continental recorded an affidavit of regulation and delay, stating it had not yet obtained federal regulatory approval to drill, and the primary term of the leases was extended under the "regulation and delay" paragraph of the leases.  The following day, Continental applied to terminate the 2,560-acre spacing unit and create a 1,920-acre spacing unit to remove the Dakota Skipper habitat.  In November 2015, the Industrial Commission approved the 1,920-acre

spacing unit. In January 2016, the commission pooled all of the oil and gas interests in the 1,920-acre spacing unit for the development and operation of the spacing unit. Following the January 2016 order, Continental began drilling operations.

[¶5] In August 2017, the Plaintiffs sued Continental, alleging the leases expired on October 25, 2015, and Continental's delay in obtaining regulatory approval to drill did not extend the leases. Both parties moved for summary judgment. The district court granted Continental's motion, concluding the "regulation and delay" provision extended the leases until regulatory approval could be obtained to begin drilling operations.

## II

[¶6] This Court's standard of review for summary judgments is well-established:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Horob v. Zavanna, LLC*, 2016 ND 168, ¶ 8, 883 N.W.2d 855 (quoting *Poppe v. Stockert*, 2015 ND 252, ¶ 4, 870 N.W.2d 187).

[¶7] When ruling on a summary judgment motion, a district court may not weigh the evidence, determine credibility or attempt to discern the truth of the matter. *Martin v. Marquee Pacific, LLC*, 2018 ND 28, ¶ 10, 906 N.W.2d 65. Deciding an issue on summary judgment is improper if the court must draw inferences or make findings on disputed material facts. *Id.*

[¶8]   Plaintiffs argue the leases expired in October 2015, and the "regulation and delay" provision did not extend them.

[¶9]   Oil and gas leases are contracts and are interpreted to give effect to the parties' mutual intent at the time of contracting. *Horob*, 2016 ND 168, ¶ 10, 883 N.W.2d 855; *see also* N.D.C.C. § 9-07-03. The parties' intent is ascertained from the writing alone if possible. N.D.C.C. § 9-07-04. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. A contract is interpreted as a whole "so as to give effect to every part if reasonably practicable." N.D.C.C. § 9-07-06. Contract interpretation is a question of law, fully reviewable on appeal. *Horob*, at ¶ 10. In construing an oil and gas lease, "[w]e attempt to give effect to every clause, sentence, and provision in a contract." *Fleck v. Missouri River Royalty Corp.*, 2015 ND 287, ¶ 8, 872 N.W.2d 329.

[¶10]  Here, the lease term is governed under Paragraph 3:

> "3. Term of Lease. This lease shall be in force for a primary term of three (3) years from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled or unitized therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof."

Paragraph 17 of the leases provide the lessee an option to extend the three-year primary term for an additional year. In October 2014, Continental exercised the option and extended the leases.

[¶11]  The district court concluded Continental's inability to obtain drilling permits for the subject property extended the leases. The court held the leases were extended under Paragraph 12, which provides:

> "12. Regulation and Delay. Lessee's obligations under this lease, whether express or implied, shall be subject to all applicable laws, rules, regulations and orders of any governmental authority having jurisdiction, including restrictions on the drilling and production of wells, and regulation of the price or transportation of oil, gas and other substances covered hereby. When drilling, reworking, production

3

or other operations are prevented or delayed by such laws, rules, regulations or orders, or by inability to obtain necessary permits, . . . or by fire, flood, adverse weather conditions, war, sabotage, rebellion, insurrection, riot, . . . this lease shall not terminate because of such prevention or delay, and, at Lessee's option, the period of such prevention or delay shall be added to the term hereof. Lessee shall not be liable for breach of any provisions or implied covenants of this lease when drilling, production, or other operations are so prevented or delayed."

[¶12] Paragraph 12 is a force majeure clause. We have defined a force majeure clause as "[a] contractual provision allocating the risk of loss if performance becomes impossible or impracticable, esp[ecially] as a result of an event or effect that the parties could not have anticipated or controlled." *Entzel v. Moritz Sport and Marine*, 2014 ND 12, ¶ 7, 841 N.W.2d 774 (quoting *Black's Law Dictionary* 718 (9th ed. 2009)).

[¶13] The Plaintiffs argue Paragraph 12 does not apply during the primary term of the leases. They argue Paragraph 12 only applies after there has been production to extend the leases beyond the primary term. They also contend Paragraph 12 is subject to a limitations clause included in Exhibit A, an exhibit attached to and made a part of the leases. The limitations clause excludes obtaining permits as an operation sufficient to hold the leases beyond the primary term, stating:

"(p) Operations sufficient to hold this lease beyond the primary term shall not include obtaining permits, surveying a drill site, staking a well, building roads, hauling equipment or supplies, construction of a road or drill site nor any other surface work in preparation for drilling or reworking."

Paragraph (p) of Exhibit A is related to Paragraph 4 of the leases, providing in relevant part:

"4. Operations. . . . If after the primary term this lease is not otherwise being maintained in force, but Lessee is then engaged in Operations, as defined below, then this lease shall remain in force so long as any one or more Operations are prosecuted with no interruption of more than 180 consecutive days. . . . As used herein, the term 'Operations' shall mean any activity conducted on . . . the leased premises, or the lands pooled or unitized therewith, that is reasonably calculated to obtain or restore production, including without limitation,

4

(i) drilling ~~or any act preparatory to drilling (such as obtaining permits, surveying a drill site, staking a drill site, building roads, clearing a drill site, or hauling equipment or supplies)~~.”

[¶14] Paragraphs 4 and (p) are related in that the struck-out language in Paragraph 4 is similar to the language of Paragraph (p). Both provisions use the phrase “after the primary term” or “beyond the primary term,” indicating those provisions apply during the secondary term of the leases. Therefore, those provisions only limit Paragraph 12’s language relating to obtaining permits during the secondary term of the leases.

[¶15] Unlike Paragraphs 4 and (p), nothing in the plain language of Paragraph 12 limits its application to the secondary term. Paragraph 3 states the leases will be in effect for three years and as long thereafter if oil or gas is being produced. Paragraph 3 states the leases also may be “maintained in effect pursuant to the provisions hereof.” Under Paragraph 12, the leases will not terminate if a delay occurs due to the circumstances listed, including regulatory delay in obtaining drilling permits during the primary term. In construing the lease as a whole, Paragraph 12 applies during the primary and secondary terms.

[¶16] The Plaintiffs cite cases from other jurisdictions holding a force majeure clause did not apply during the lease’s primary term. *See Beardslee v. Inflection Energy, LLC*, 31 N.E.3d 80 (N.Y. 2015); *Aukema v. Chesapeake Appalachia, LLC*, 904 F. Supp. 2d 199 (N.D.N.Y. 2012). The language of the leases and force majeure clauses in those cases differs from the language of the leases in this case. *See* 4 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law*, § 683.1 (noting that a force majeure clause may provide for the extension of the primary term of a lease depending on the language of the force majeure clause). Our holding here is limited to the specific language of the leases, and the cases cited by the Plaintiffs are not persuasive.

IV

5

[¶17] Plaintiffs argue the delay in Continental's attempt to obtain the drilling permit for the 2,560-acre spacing unit was unreasonable because Continental could have obtained a permit for a smaller spacing unit during the primary term of the leases.

[¶18] "An express *force majeure* clause in a contract must be accompanied by proof that the failure to perform was proximately caused by a contingency and that, in spite of skill, diligence, and good faith on the promisor's part, performance remains impossible or unreasonably expensive." *Entzel*, 2014 ND 12, ¶ 7, 841 N.W.2d 774 (quoting 30 *Williston on Contracts* § 77:31, 366 (4th ed.)). "Whether a party acted in good faith is a question of fact." *Martin*, 2018 ND 28, ¶ 23, 906 N.W.2d 65.

[¶19] The Plaintiffs allege Continental's inability to obtain a permit for the 2,560-acre spacing unit did not prevent Continental from drilling on a smaller parcel during the primary term. Plaintiffs assert Continental should have requested to terminate the 2,560-acre spacing unit sooner than three days before the primary term expired. Plaintiffs claim that had the 2,560-acre spacing unit been terminated earlier, Continental could have obtained a permit and drilled during the primary term.

[¶20] The district court rejected the Plaintiffs' arguments:

> "Nothing in the Leases requires that Continental abandon its planned drilling operations where those operations have been delayed by the inability to obtain permits necessary to those operations.
> . . . .
> "Based on the evidence presented by the parties in this case it is undisputed that, despite Continental's efforts to develop the Subject Lands as part of the 2560 Spacing Unit, Continental was prevented from commencing operations within the primary term of the Leases by a contingency beyond its control, namely the decisions of the U.S. Fish and Wildlife Service and the BLM [Bureau of Land Management]. It is likewise undisputed that the BLM's decision to withhold approval of Continental's May 15, 2012 APD [application for a permit to drill] did not arise as a result of the fault or negligence of Continental; rather, Continental had no reason to believe it would be unable to commence operations on the Subject Lands until August 24, 2015, when it received the U.S. Fish and Wildlife Service's Biological Opinion indicating that issues pertaining to protection of the Dakota skipper and its habitat would delay approval of the APD. Accordingly, Plaintiffs' arguments on this point are thus unavailing."

6

[¶21] The district court concluded the delay in obtaining drilling permits for the 2,560-acre spacing unit was beyond Continental's control and was not because of Continental's fault or negligence. However, the court did not address whether Continental acted diligently and in good faith in pursuing a permit to drill the 2,560-acre spacing unit for more than three years. *See Entzel*, 2014 ND 12, ¶ 7, 841 N.W.2d 774 (stating a party relying on an express force majeure clause in a contract must provide proof that, despite the party's good faith and diligence, performance was impossible or unreasonably expensive). The Plaintiffs' arguments relate to Continental's good faith and diligence in obtaining the drilling permits. Viewing the evidence and inferences to be drawn from the evidence in a light favorable to the Plaintiffs, a genuine issue of material fact exists as to whether Continental acted diligently and in good faith. We reverse the court's judgment and remand for further proceedings on this issue.

V

[¶22] The parties' remaining arguments are without merit or not necessary to our decision. The judgment is affirmed in part, reversed in part and remanded for further proceedings.

[¶23]  Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Lisa Fair McEvers
David Nelson, S.J.


[¶24] The Honorable David Nelson, S.J., sitting in place of VandeWalle, C.J., disqualified.

7