

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## ROSEANA E.D. PALMER,
Plaintiff-Appellee,

**v.**

## MARIANA STONES CORPORATION,
## and DOES 1 through 10,
Defendant-Appellant.

Supreme Court Case No.: CVA19-002
Superior Court Case No.: CV0709-13

## OPINION

## Cite as: 2021 Guam 5

Appeal from the Superior Court of Guam
Argued and submitted on May 1, 2020
Via Zoom video conference

Appearing for Defendant-Appellant:
Peter C. Perez, *Esq.*
Law Office of Peter C. Perez
DNA Bldg.
238 Archbishop Flores St., Ste. 802
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Genevieve P. Rapadas, *Esq.* (Argued)
Kathleen V. Fisher, *Esq.*
Sarah L. Fabian, *Esq.*
Calvo Fisher & Jacob LLP
259 Martyr St., Ste. 100
Hagåtña, GU 96910

**E-Received**
6/25/2021 3:39:44 PM


BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**TORRES, J.:**

[1]　　Defendant-Appellant Mariana Stones Corporation appeals the trial court's second amended judgment, which the court entered after finding Mariana Stones Corporation failed to establish its affirmative defenses of frustration of purpose and impossibility or impracticability. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]　　This case arises from Plaintiff-Appellee Roseana E.D. Palmer's complaint against Mariana Stones Corporation ("MSC") alleging one cause of action for breach of contract. Palmer owns Lot No. 3-2 in Dededo, in an area known as Urunao ("Lot No. 3-2"). Palmer and MSC entered a lease agreement for MSC to "lease the Property so that it can extract aggregate thereon." Record on Appeal ("RA"), tab 1, Ex. A at 1 (Lease Agreement, Sept. 3, 2011) ("Lease Agreement"). Under the Lease Agreement, MSC was to use the leased property to extract and remove aggregates[1] for five years from September 1, 2011, until August 31, 2016. In exchange, MSC was to pay Palmer: (1) $50,000.00 on March 1, 2012; and (2) beginning on June 1, 2012, a minimum of $8,000.00 per month in rent through the remainder of the Lease Agreement. Alternatively, if the actual aggregate MSC removes from the property, valued at $2.00 per cubic yard, results in an amount greater than the minimum rent for that month (i.e., $8,000.00), then MSC would instead pay that higher amount.

[3]　　Lot No. 3-2 is adjacent to and south of the federally-owned Guam National Wildlife Refuge. The U.S. Fish and Wildlife Service ("USFWS") owns and manages the refuge. Getting

---

[1] The Lease Agreement states: "Lessor hereby leases the Property exclusively to Lessee for (a) exploring for, developing, extracting, processing, removing and selling, when and as determined by Lessee, mineral materials which may be used or useful as aggregate . . . and (b) uses and activities determined by Lessee to be necessary or desirable in connection therewith[.]" RA, tab 1, Ex. A at 2 (Lease Agreement, Sept. 3, 2011).

to Lot No. 3-2 by vehicle requires use of an easement that runs through the refuge.[2] A sign at the entrance of the refuge states: "Entering Guam Wildlife Refuge Special Regulations Apply." RA, tab 99 at 3 (Finds. Fact & Concl. L., Feb. 22, 2018). The trial court found that, before entering the Lease Agreement, Palmer and MSC's representatives saw the refuge sign, but neither knew of any federal permit requirements to cross the easement onto Lot No. 3-2.

[4]    In 2012, USFWS informed MSC that MSC needed a special use permit to transport aggregate through the refuge using the easement. MSC applied for the permit, but USFWS rejected the application. MSC did not appeal the denial. For some period, MSC continued to transport aggregate over the easement and refuge, resulting in at least twenty violation notices from USFWS.[3]

[5]    MSC eventually ceased extracting aggregate from the Leased Property. The U.S. Attorney's Office for the Districts of Guam and the Northern Mariana Islands ("USAO") gave the parties four alternatives for accessing the leased property, but the record does not indicate that MSC pursued any of these alternatives. *See* Appellant's Br. at 21 n.3 (Sept. 9, 2019); Appellee's Br. at 7 (Oct. 23, 2019). To date, MSC has made only two payments to Palmer: $10,000.00 on April 2, 2012, and $40,000.00 on August 2, 2012.[4] MSC has extracted about 300 cubic yards of aggregate from Lot No. 3-2, amounting to $600.00 as valued under the Lease Agreement's terms.

[6]    MSC's answer to Palmer's complaint raised several affirmative defenses, including that MSC's failure to pay was "excused under the doctrines of Frustration of Purpose of Contract,

---

[2] The District Court of Guam had granted the easement to Urunao's landowners in 1994 through a consent decree. RA, tab 99 at 3 (Finds. Fact & Concl. L., Feb. 22, 2018).

[3] According to those USFWS notices, MSC violated 50 C.F.R. § 27.97, which states: "Private operations. Soliciting business or conducting a commercial enterprise on any national wildlife refuge is prohibited except as may be authorized by special permit." RA, tab 99 at 4-5 (Finds. Fact & Concl. L.); 50 C.F.R. § 27.97.

[4] MSC did not make any monthly payments from June 1, 2012, to August 31, 2016. RA, tab 99 at 5 (Finds. Fact & Concl. L.).

Impossibility, and Impracticability," and that Palmer's damages "were caused, in whole or part, due to the intervening and or superseding causes outside and beyond Defendant's control."[5]  RA, tab 5 at 3 (Answer, June 21, 2013).  Palmer later moved for summary judgment.  The trial court found Palmer met the summary judgment burden on her breach of contract claim, but genuine issues of material fact existed on the foreseeability element of MSC's frustration of purpose defense, which precluded the court from granting summary judgment.

[7]      Before the initially–scheduled bench trial in 2014, MSC's trial brief elaborated on its frustration of purpose defense and raised two new defenses: *force majeure*, and Palmer's failure to mitigate damages as a landlord.  In response, Palmer filed a motion *in limine* to exclude from trial any evidence on MSC's *force majeure* and mitigation defenses, arguing (1) MSC had waived those affirmative defenses by failing to raise them in its first responsive pleading, and (2) allowing them would prejudice Palmer because MSC raised the defenses shortly before trial.  The trial court granted Palmer's motion.  MSC moved to amend its answer and to set aside the trial court's decision and order on the motions in limine.  The trial court denied both motions.

[8]      The bench trial began in 2017. Referring to its earlier decision on the motions *in limine*, the court limited the trial only to the question of MSC's defenses on frustration of purpose and impossibility or impracticability.  The court eventually decided for Palmer, concluding (1) MSC proved none of the elements of its frustration of purpose defense; and (2) MSC failed to prove its impossibility or impracticability defense since the supervening event was foreseeable, and the USAO had indicated alternative routes to Lot No. 3-2.  The court awarded Palmer damages amounting to $408,000.00, pre- and post-judgment interest at six percent per annum, and attorney's fees and costs.

---

[5] MSC's other affirmative defenses included: failure to state a claim upon which relief can be granted; unclean hands; estoppel; waiver of breach; and laches.

**[9]**     The trial court entered a second amended judgment, and MSC timely appealed.

## II.  JURISDICTION

**[10]**     This court has jurisdiction over appeals from a final judgment of the Superior Court.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-17 (2021)); 7 GCA §§ 3107, 3108(a) (2005).

## III.  STANDARD OF REVIEW

**[11]**     A trial court's findings of fact in a bench trial, whether based on oral or documentary evidence, "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  *Unified Interest v. PacAir Props., Inc.*, 2017 Guam 9 ¶ 24 (quoting *Town House Dep't Stores, Inc. v. Ahn*, 2000 Guam 32 ¶ 13).  We review conclusions of law *de novo*.  *Id.*

**[12]**     We review for abuse of discretion the trial court's decision on a motion *in limine* to exclude evidence.  *See, e.g.*, *People v. Quinata*, 2010 Guam 17 ¶ 28; *McCoy v. Pac. Mar. Ass'n*, 156 Cal. Rptr. 3d 851, 863 (Ct. App. 2013).  We also review for abuse of discretion the trial court's denial of a motion to amend under Guam Rule of Civil Procedure ("GRCP") 15(a).  *M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2016 Guam 35 ¶ 25.

**[13]**     We review legal issues of contract interpretation *de novo*.  *Guam Resorts, Inc. v. G.C. Corp.*, 2013 Guam 18 ¶ 34.

## IV.  ANALYSIS

**[14]**     On appeal, MSC argues the trial court erred when it (1) excluded evidence on MSC's defenses of *force majeure* and failure to mitigate; (2) denied MSC leave to amend to conform to the trial evidence on those two same defenses; (3) failed to consider MSC's affirmative defense based on "intervening and superseding causes outside and beyond MSC's control," having found

that defense a reiteration of MSC's frustration of purpose and impossibility or impracticability defenses; (4) concluded MSC did not establish its frustration of purpose defense; and (5) concluded MSC did not establish its impossibility or impracticability defenses. *See* Appellant's Br. at 25-28. MSC also included in its reply brief a section styled as a motion to strike the briefs and other memoranda in Palmer's supplemental excerpts of record. Appellant's Reply Br. at 1-2 (Nov. 6, 2019). We review each of these arguments in turn.[6]

## A. The Trial Court Correctly Found MSC Waived Its Affirmative Defenses of *Force Majeure* and Failure to Mitigate

[15] MSC argues the trial court abused its discretion when it excluded from the trial MSC's evidence concerning its defenses of *force majeure* and failure to mitigate. We disagree.

[16] Under Guam law, a party must plead an affirmative defense in its answer—and failure to bring an affirmative defense at that time results in a waiver precluding a party from raising the defense at a later time. *See Hemlani v. Hemlani*, 2015 Guam 16 ¶ 23 (citations omitted); *Yoshida v. Guam Transp. & Warehouse, Inc.*, 2013 Guam 5 ¶ 34. GRCP 8(c) provides: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense." Guam R. Civ. P. 8(c).

[17] Courts have considered *force majeure* as equivalent to an affirmative defense. *See, e.g.*, *Entzel v. Moritz Sport & Marine*, 2014 ND 12, ¶ 7, 841 N.W.2d 774, 778 ("[A] force majeure clause is equivalent to an affirmative defense." (citing 30 Williston on Contracts § 77.31, at 364 (4th ed. 2004))); *Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 34, 134 N.M. 308, 76 P.3d 626 ("A claim of force majeure is equivalent to an affirmative defense, and therefore the burden is on the lessee to prove that the events were beyond their control."). And where courts have not

---

[6] Generally, a notice of appeal that names only the final judgment suffices to support review of all earlier orders that merge into that judgment. *M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2016 Guam 35 ¶¶ 34, 37.

identified *force majeure* as a *per se* affirmative defense, they have nonetheless placed the burden on proving *force majeure* on the party seeking to excuse performance. *See, e.g.*, *Beardslee v. Inflection Energy, LLC*, 904 F. Supp. 2d 213, 220 (N.D.N.Y. 2012), *aff'd*, 798 F.3d 90 (2d Cir. 2015) ("As the party invoking the doctrine, defendants carry the burden to establish force majeure." (citing *Phillips P.R. Core, Inc. v. Tradax Petroleum, Ltd.*, 782 F.2d 314, 319 (2d Cir. 1985))); *Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 402 (Tex. App. 2009) ("The party seeking to excuse its performance under a contractual *force majeure* clause . . . bears the burden of proof to establish that defense."); *United States v. Panhandle E. Corp.*, 693 F. Supp. 88, 95 (D. Del. 1988) ("As the parties who have failed to perform their obligations and who have affirmatively asserted the defense of force majeure, defendants bear the burden of proof on this issue." (citing *Gulf Oil Corp. v. FERC*, 706 F.2d 444, 452 (3d Cir. 1983))). Since MSC did not raise its *force majeure* defense until its trial brief, the trial court was correct in finding MSC had waived the defense.

[18]     MSC argues it met the requirements of GRCP 8(c) by pleading *force majeure* in the fourth affirmative defense of its answer. Appellant's Br. at 31. That pleading stated: "Plaintiff's damages, if any, were caused, in whole or part, due to the intervening and or superseding causes outside and beyond Defendant's control." RA, tab 5 at 3 (Answer). We are unpersuaded that language pleaded *force majeure*, since the Lease Agreement includes a *force majeure* clause on which MSC needed to rely to establish the defense. *See Or. Potato Co. v. Kerry Inc.*, 20-cv-92-jdp, 2020 WL 4586401, at *3 (W.D. Wis. Aug. 10, 2020) ("[T]he general rule is that the scope of a force majeure *defense* is dependent on the language of a contractual provision."); *R & B Falcon Corp. v. Am. Expl. Co.*, 154 F. Supp. 2d 969, 973 (S.D. Tex. 2001) ("Contractual terms are controlling regarding *force majeure*[,] with common law rules merely filling in gaps left by the

document. 'In other words, when the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure.'" (quoting *Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 282 (Tex. App. 1998))).

[19] Similarly, MSC should have raised Palmer's failure to mitigate as an affirmative defense in its initial pleading. *See, e.g.*, *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 299 (3d Cir. 2014) (surveying Delaware cases that have held mitigation of damages as an affirmative defense); *Takiff Props. Grp. Ltd. #2 v. GTI Life, Inc.*, 2018 IL App (1st) 171477, ¶ 15 ("This doctrine [of mitigation of damages] has long constituted an affirmative defense to be pleaded and proved by the defendant." (citing *Rozny v. Marnul*, 250 N.E.2d 656, 666 (Ill. 1969))); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("Failure to mitigate damages is an affirmative defense and therefore must be pleaded. The general rule . . . is that a failure to plead an affirmative defense results in a waiver." (internal citation omitted)); *Conway v. Hercules Inc.*, 831 F. Supp. 354, 359 (D. Del. 1993) ("The mitigation of damages is an affirmative defense.").[7]

[20] MSC's failure to raise the affirmative defenses of *force majeure* and failure to mitigate resulted in a waiver thereof. The trial court therefore did not abuse its discretion when it granted Palmer's motions *in limine* and excluded evidence on those defenses from trial.

//

//

//

---

[7] MSC refers to our previous statement where we referred to the landlord's duty to mitigate damages. *See* Appellant's Br. at 29; *Guam United Warehouse Corp. v. DeWitt Transp. Servs. of Guam, Inc.*, 2003 Guam 20 ¶ 26. While Palmer, as the landlord or lessor, may have borne that duty, it was still incumbent on MSC to plead mitigation as one of its affirmative defenses—especially since a fact-intensive inquiry on mitigation would have prejudiced Palmer had MSC been allowed to raise it on the eve of trial. *See, e.g.*, *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 277 (Tex. App. 2006) (examining how section 91.006 of Texas Property Code requires landlord to mitigate damages after breach of lease, but emphasizing how tenant must plead landlord's failure to mitigate as affirmative defense).

**B. The Trial Court Correctly Denied MSC's Motion to Amend Its Pleadings, and MSC's Amendment to Conform to the Trial Evidence**

[21]     MSC argues the trial court abused its discretion and deprived MSC of substantial justice when it denied MSC's motion to amend its answer.  Appellant's Br. at 46.  MSC tried to amend its answer to raise new affirmative defenses and counterclaims almost 27 months after the court's deadline in the scheduling order.  MSC further argues the trial court abused its discretion when it did not permit MSC an amendment to conform to the trial evidence its *force majeure* and failure to mitigate defenses.  We disagree with both arguments.

[22]     MSC insists on appeal that, under GRCP 15(a), the trial court should have allowed MSC leave to amend its answer.  *Id.* at 48.  We have said before that "in matters of pleading, leave to amend should always be liberally granted."  *Arashi & Co. v. Nakashima Enters., Inc.*, 2005 Guam 21 ¶ 16 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  But "when a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard" under GRCP 16(b)(4)[8]—not the standard under GRCP 15(a).  *W. States Wholesale Nat. Gas Antitrust Litig. v. Oneok, Inc.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).  And "[u]nlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Amendment should not be permitted if the moving party cannot show diligence.  *Id.*

---

[8] GRCP 16(b)(4), which is nearly identical to its federal counterpart, provides: "A schedule may be modified only for good cause and with the judge's consent."  Guam R. Civ. P. 16(b)(4).

[23]     MSC has not shown good cause and was not diligent when it waited 27 months after the deadline established in the scheduling order before moving to amend its answer.  The trial court did not abuse its discretion or deprive MSC substantial justice when it denied MSC's motion to amend its answer.

[24]     MSC also fails to cite to any authority or facts on the record informing us how the trial court abused its discretion by refusing amendments to conform to the trial evidence on MSC's *force majeure* and failure to mitigate defenses.  "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Guam R. Civ. P. 15(b).  But the record shows the parties neither expressly nor impliedly consented to trying MSC's *force majeure* or failure to mitigate defenses—instead, Palmer's counsel repeatedly objected to MSC's attempts to raise those defenses in trial.  *See., e.g.*, Tr. at 35-39 (Bench Trial, Sept. 20, 2017).  That argument also fails to persuade us.

## C. The Trial Court Correctly Disregarded the Affirmative Defenses that MSC Had Abandoned Upon Palmer's Motion for Summary Judgment

[25]     MSC argues the trial court deprived MSC of its ability to defend itself at trial by disregarding MSC's affirmative defense of "intervening and superseding causes outside and beyond MSC's control."  Appellant's Br. at 49.  We disagree.  MSC abandoned that defense, alongside its other defenses, when MSC failed to include them in its opposition to Palmer's motion for summary judgment.

[26]     "Generally, 'the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense.'" *Taha v. Bucks Cnty. Pa.*, 367 F. Supp. 3d 320, 325-26 (E.D. Pa. 2019) (quoting *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993)); *see also Abbott v. Bates*, 670 N.E.2d 916, 920 n.1 (Ind. Ct. App. 1996) ("If a defendant in its pleadings raises an affirmative defense, but

subsequently fails to address the issue in opposition to a summary judgment motion, the affirmative defense is waived.").[9]

[27]    MSC insists its defense of "intervening and superseding causes outside and beyond MSC's control" was separate from its frustration of purpose and impossibility or impracticability defenses. Appellant's Br. at 49; *see also* RA, tab 99 at 7 n.5 (Finds. Fact & Concl. L.). If so, then the trial court properly disregarded the defense, since MSC abandoned it by failing to address it when opposing Palmer's motion for summary judgment.[10]  *See* RA, tab 19 (Def.'s Opp'n to Pl.'s Mot. Summ. J., Feb. 21, 2014).

[28]    For the same reason, we consider abandoned MSC's defenses of failure to state a claim, unclean hands, estoppel, waiver of breach, and laches.

## D. The Trial Court Reached the Correct Outcome When It Concluded MSC Did Not Establish Its Frustration of Purpose Defense

[29]    MSC argues the trial court clearly erred when it concluded MSC failed to establish its frustration of purpose defense. Appellant's Br. at 49-50. While we find error in how the trial court analyzed one element of MSC's frustration defense, the trial court ultimately reached the correct outcome.

---

[9] As one court explained:

> [W]hen a plaintiff moves for summary judgment on an entire claim (as opposed to only part of a claim or only on a defense to the claim), it is asking for judgment on that claim as a matter of law. *See* Fed. R. Civ. P. 56(a). The existence of factual disputes concerning an affirmative defense would be a reason to not grant the plaintiff judgment as a matter of law, even if there are no factual disputes concerning the plaintiff's claim itself. Thus, when the plaintiff moves for summary judgment on an entire claim, it is necessarily also moving for summary judgment on any affirmative defenses to that claim. It is therefore incumbent on a defendant that wishes to prevent entry of summary judgment on the claim to come forward with evidence showing the existence of a genuine factual dispute concerning an affirmative defense that, if ultimately successful, would defeat the claim.

*United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978, 987-88 (E.D. Wis. 2013).

[10] MSC's opposition to Palmer's motion for summary judgment does not mention "intervening and superseding causes outside and beyond MSC's control." RA, tab 19 (Def.'s Opp'n to Pl.'s Mot. Summ. J., Feb. 21, 2014). It refers to "intervening cause[s]"—but as elements of MSC's frustration of purpose and impossibility defenses. *Id.*

**[30]**     We have not had occasion to closely examine the frustration of purpose defense in this jurisdiction.  The defense "is very difficult to invoke," as courts are reluctant to allow parties to disavow their contractual obligations.  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 620 (Del. Ch. 2005), *aff'd in part, rev'd in part*, 901 A.2d 106 (Del. 2006).[11]

**[31]**     In examining the defense, the trial court invoked *Peoplesoft U.S.A., Inc. v. Softeck, Inc.*, 227 F. Supp. 2d 1116 (N.D. Cal. 2002), which surveyed California caselaw and expressed the following factors needed to establish frustration of purpose:

> To excuse nonperformance of a contract on the ground of commercial frustration, 1) the basic purpose of the contract, which has been destroyed by the supervening event, must be recognized by both parties to the contract; 2) the event must be of a nature not reasonably to have been foreseen, and the frustration must be so severe that it is not fairly to be regarded as within the risks that were assumed under the contract; and 3) the value of counterperformance to the promisor seeking to be excused must be substantially or totally destroyed.

*Id.* at 1119-20 (citing *Brown v. Oshiro*, 156 P.2d 976, 978-79 (Cal. Dist. Ct. App. 1945); *Dorn v. Goetz*, 193 P.2d 121, 123-24 (Cal. Dist. Ct. App. 1948); *Gold v. Salem Lutheran Home Ass'n of Bay Cities*, 347 P.2d 687, 689 (Cal. 1959) (in bank); *FPI Dev., Inc. v. Nakashima*, 282 Cal. Rptr. 508, 527-28 (Ct. App. 1991)).  We find the *Peoplesoft* court's formulation persuasive in this jurisdiction.[12]

---

[11] *See also, e.g.*, *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1296 (Fed. Cir. 2002) ("The [non-performing party] bears a heavy burden in proving the defense of frustration." (alteration in original) (citation omitted)); *Drummond Coal Sales, Inc. v. Kinder Morgan Operating LP "C"*, Case No. 2:16-cv-00345-SGC, 2017 WL 3149442, at *7 (N.D. Ala. July 25, 2017) ("The doctrine of frustration of purpose is applied narrowly and only when the frustration is 'substantial.'" (quoting *Crown IT Servs. v. Koval-Olsen*, 782 N.Y.S.2d 708, 711 (App. Div. 2004))), *aff'd*, 836 F. App'x 857 (11th Cir. 2021); *JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc.*, 67 A.3d 702, 710-11 (N.J. Super. Ct. App. Div. 2013) ("A key facet of the frustration of purpose doctrine, as it is applied in this state, is that 'relief from performance of contractual obligations on this theory will not be lightly granted[.]'" (alteration in original) (citation omitted)).

[12] Other federal courts in California have favorably cited *Peoplesoft*'s formulation of the frustration of purpose doctrine.  *See, e.g.*, *Hensley ex rel. Hensley v. Haney-Turner, LLC*, No. Civ. S-01-2212 FCD DAD, 2006 WL 8458651, at *3 (E.D. Cal. Sept. 28, 2006).  Other state courts have expressed a similar test.  *See, e.g.*, *Castagno v. Church*, 552 P.2d 1282, 1283-84 (Utah 1976) (citing *Lloyd v. Murphy*, 153 P.2d 47, 50 (Cal. 1944) (in bank)).

### 1. The parties had recognized the contract's basic purpose, as expressed in the contract's text

[32]    The trial court eventually reached the correct outcome, but it erred in applying the first element of the test, which requires that "the basic purpose of the contract, which has been destroyed by the supervening event, must be recognized by both parties to the contract." *Peoplesoft*, 227 F. Supp. 2d at 1119. The trial court found MSC failed to demonstrate the mutually recognized basic purpose of the Lease Agreement, since the parties disputed the contract's purpose during litigation. RA, tab 99 at 8 (Finds. Fact & Concl. L.) ("For example, Mrs. Palmer asserts that the purpose in entering the [Lease] Agreement was to be paid monthly rent by leasing the Property. Defendant, however, states that the basic purpose of the [Lease] Agreement was to extract, remove, and sell materials taken from Mrs. Palmer's property.").

[33]    The trial court's analysis instead should have begun with the text of the Lease Agreement.[13] *See, e.g.*, *PPF Safeguard, LLC v. BCR Safeguard Holding, LLC*, 924 N.Y.S.2d 391, 394 (App. Div. 2011) (finding, in analyzing frustration defense, that "purpose of the . . . agreement is evident from the plain language of the contract," especially where "the parties' intent [is] clearly expressed within the four corners of their writing"). Under the section "Purpose," the Lease Agreement states: "Lessee wishes to lease the Property so that it can extract aggregate thereon." RA, tab 1, Ex. A at 2 (Lease Agreement). Other provisions in the Lease Agreement also confirm that the agreement's purpose was for MSC to lease Lot No. 3-2 for extraction.[14]

---

[13] Relying on the parties' statements during litigation to determine the contract's basic purpose, as the trial court did, renders the frustration of purpose defense ineffectual. Parties opposing the defense merely would have to contradict the contract's basic purpose as alleged by the defendant during litigation in order to stymie the test.

[14] Among those provisions: (1) the Lease Agreement refers to itself as "[t]his Extraction Lease And Construction Agreement," RA, tab 1, Ex. A at 1 (Lease Agreement); (2) under "Consideration," the Lease Agreement refers to MSC's payment to Palmer as partly based on "usable aggregate material removed" from the property, *id.*; (3) under "Grant of Lease," the Lease Agreement refers repeatedly to extraction and extraction-related activities, *id.* at 2.

[34]    Contrary to the trial court's conclusion, we find MSC met the test's first element—the parties had agreed on the contract's basic purpose, as expressed in the contract's text.

### 2. The supervening event was reasonably foreseeable

[35]    To establish its frustration of purpose defense, MSC also needed to show that the supervening event was "of a nature not reasonably to have been foreseen" and the frustration "so severe that it is not fairly to be regarded as within the risks that were assumed under the contract." *Peoplesoft*, 227 F. Supp. 2d at 1119.  The trial court found the supervening event that frustrated MSC's purpose—USFWS denying MSC a license to cross the refuge easement—was reasonably foreseeable because (1) the refuge sign at the entrance to the Guam National Wildlife Refuge gave MSC actual notice of the easement's restrictions, and (2) provisions in the Lease Agreement indicate MSC bore the obligation to secure government permits needed to facilitate work on Lot No. 3-2.  *See* RA, tab 99 at 9 (Finds. Fact & Concl. L.).

[36]    "If the possibility of governmental regulation is reasonably foreseeable[,] there can be no commercial frustration of a contract."  *Glens Falls Indem. Co. v. Perscallo*, 216 P.2d 567, 569 (Cal. Dist. Ct. App. 1950).  The possibility of USFWS's actions here were reasonably foreseeable since the refuge's entrance had a sign that warned MSC of possible "special regulations" restricting access.  *See* RA, tab 99 at 3 (Finds. Fact & Concl. L.).  As a sophisticated party to the transaction, MSC also should have contracted for the possibility that USFWS could deny it access.  *See, e.g.*, *Mortenson v. Scheer*, 957 P.2d 1302, 1306 (Wyo. 1998) ("The obligor is expected to provide in the contract for contingencies that are foreseeable.  This is particularly true in an instance in which performance of the contract depends upon obtaining a governmental license or permit which is required." (internal citations omitted)); *URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ.*, 915 F. Supp. 1267, 1287 (D.R.I. 1996) ("Ordinarily, when one contracts to render

a performance for which a government license or permit is required, it is his duty to get the license or permit so he can perform. The risk of inability to obtain it is on him; and its refusal by the government is no defense in a suit for breach of his contract." (quoting 6 Corbin, *Corbin on Contracts*, § 1347, at 435 (1962 & Supp. 1994))); *Lloyd v. Murphy*, 153 P.2d 47, 51 (Cal. 1944) ("Thus laws or other governmental acts that make performance unprofitable or more difficult or expensive do not excuse the duty to perform a contractual obligation."); *Rooney v. Slomowitz*, 784 N.Y.S.2d 189, 193 (App. Div. 2004) (finding foreseeable a party's difficulty in obtaining governmental permits necessary to construct a road).

[37]   We agree with the trial court that MSC failed to demonstrate that the permit denial by USFWS was unforeseeable.

### 3. Destruction of the value of counter-performance

[38]   The trial court found MSC did not establish the third element of its frustration defense— that the value of counter-performance to MSC, as the promisor seeking to be excused, "must be substantially or totally destroyed." *Peoplesoft*, 227 F. Supp. 2d at 1120. The trial court found USAO had suggested to MSC several alternative routes to Lot No. 3-2, yet MSC provided no evidence in court showing how those alternatives would have been expensive, burdensome, or impossible. RA, tab 99 at 9 (Finds. Fact & Concl. L.). We agree with the trial court and find the record reflects that lack of evidence.

[39]   Courts analyzing this element have found insufficient a supervening event that merely renders the bargain more expensive or less profitable for the non-performing party seeking to be excused. *See, e.g.*, *Lloyd*, 153 P.2d at 51. Instead, the increased difficulty or expense to the non-performer must be so severe that the contract's value is "totally and unforeseeably destroyed." *Tri-Town Constr. Co. v. Commerce Park Assocs. 12, LLC*, 139 A.3d 467, 476 (R.I. 2016) (quoting

*City of Warwick v. Boeng Corp.*, 472 A.2d 1214, 1219 (R.I. 1984)). For example, in *Waegemann v. Montgomery Ward & Co.*, 713 F.2d 452, 454 n.2 (9th Cir. 1983), the court did not release lessors from their performance through the frustration defense even where the supervening event left the lessors with as little as one-third of the property's fair market value for rent. In *CARD Investments., Inc. v. Burger King Corp.*, Case No. CV 12-05183 MMM (PJWx), 2012 WL 12914718, at *1, *3 (C.D. Cal. Oct. 1, 2012), the court did not consider a franchisee's loss of $611,000.00 in one year to be sufficiently destructive. And in *Lloyd v. Murphy*, the court found that where the lessor's purpose was only restricted by the government and "not made impossible or illegal," the value of the lease had not been substantially or totally destroyed. 153 P.2d at 51.

[40] MSC failed to show how its pursuit of USAO's alternatives would have substantially or totally destroyed the value of the contract—which, as MSC has averred, could have yielded significant revenues. *See, e.g.*, RA, tab 56 at 6 (Pl.'s Mot. Amend, Nov. 10, 2015) ("MSC expected to earn millions of dollars in revenue under the Extraction Lease."). MSC thus failed to establish the third element of its frustration defense.

[41] Because MSC failed to satisfy two of the three *Peoplesoft* factors, the court reached the correct outcome when it concluded MSC did not establish its frustration of purpose defense.

**E. The Trial Court Correctly Found MSC Failed to Prove Its Impossibility or Impracticability Defense**

[42] The trial court found MSC's impossibility or impracticability defense also requires the element of unforeseeability, and so MSC's failure to establish that element in its frustration defense precluded its impossibility or impracticability defense. RA, tab 99 at 9-10 (Finds. Fact & Concl. L.). We agree with the outcome of the trial court's findings but deviate in our analysis.

[43] As with frustration of purpose, we find California courts persuasive on this issue—and in that jurisdiction, "[i]mpossibility is a defense to contract enforcement." *Hebrank v. LinMar IV,*

*LLC*, No. 3:13-cv-2181-GPC-JMA, 2014 WL 3797942, at \*4 (S.D. Cal. July 29, 2014) (citing *Mineral Park Land Co. v. Howard*, 156 P. 458, 459-60 (Cal. 1916)). For performance to be excused, it must be objectively—not subjectively—impossible or impracticable. *See Hensler v. City of Los Angeles*, 268 P.2d 12, 21 (Cal. Dist. Ct. App. 1954). And so "a party may not generally rely on an impossibility defense to justify its failure to make payments, as making payments is not objectively impossible or impracticable." *Hebrank*, 2014 WL 3797942, at \*4 (citing *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 728 (7th Cir. 2009)). Whereas frustration of purpose may arise when a supervening event destroys the value of *consideration* under a contract, impossibility or impracticability may arise when a supervening event makes a party's *performance* objectively impossible or impracticable.

[44]    *Peoplesoft* illustrates the distinction. Peoplesoft had licensed software to Softek, and Softek had agreed to pay Peoplesoft for licensing fees and other costs. *Peoplesoft*, 227 F. Supp. 2d at 1117. When Softek's third-party customer decided not to use the software, Softek returned the software unused. *Id.* Peoplesoft alleged a single count for breach of contract, and Softek raised, among other defenses, frustration of purpose and impossibility. *Id.* The *Peoplesoft* court found Softek's impossibility defense inapplicable, as Softek still could perform under the contract by paying for the software. *See id.* at 1119-20.

[45]    Similarly, in *7200 Scottsdale Road General Partners v. Kuhn Farm Machinery, Inc.*, the plaintiff was a resort and defendant Kuhn was a convention organizer. 909 P.2d 408, 410 (Ariz. Ct. App. 1995). Kuhn rented the resort's facilities for an event, which Kuhn then cancelled after the Gulf War broke out. *Id.* at 410-11. The resort sued for breach of contract, and Kuhn claimed its performance was excused partly due to impracticability. *Id.* at 411-12. The court found Kuhn did not have a claim for impossibility or impracticability since there was no impediment to Kuhn's

contractual duty to pay—and noted that Kuhn's concern over the event's diminished value should be analyzed under the frustration defense, and not under impossibility or impracticability. *Id.* at 413.

[46]    MSC's performance under the contract is not impossible since it can still pay Palmer its rent—regardless of any diminution to the contract's value for MSC. MSC's impossibility defense fails under this analysis.

## F. MSC Improperly Moved to Strike the Briefs and Other Memoranda in Palmer's Supplemental Excerpts of Record

[47]    In its reply brief, MSC included a section "object[ing] to and mov[ing] to strike Ms. Palmer's inclusion of briefs and other memoranda in and from her Supplemental Excerpts of Record." *See* Reply Br. at 1. MSC claims Palmer violated Rule 15 of the Guam Rules of Appellate Procedure when her Supplemental Excerpts of Record included those documents. *Id.* We disagree, as Rule 15(d) allows the inclusion of briefs or other memoranda of law filed in the trial court if the pages included are necessary to resolve an issue on appeal.[15] MSC had appealed the trial court's decision to grant Palmer's motion *in limine*, which required this court to discern whether MSC had raised its *force majeure* and failure to mitigate defenses at any point before its trial brief.

## V. CONCLUSION

[48]    The trial court did not err in finding MSC waived its affirmative defenses of *force majeure* and failure to mitigate. The trial court also did not err in denying MSC's motion to amend its pleadings and MSC's amendment to conform to the trial evidence. The trial court was correct in disregarding the affirmative defenses MSC had abandoned upon Palmer's motion for summary

---

[15] Rule 15(d) provides: "The excerpts of record shall not include brief or other memoranda of law filed in the Superior Court unless necessary to the resolution of an issue on appeal, and shall include only those pages necessary therefor." Guam R. App. P. 15(d).

judgment. MSC did not establish its frustration of purpose defense and failed to prove its impossibility or impracticability defense. For these reasons, we **AFFIRM** the trial court's second amended judgment.

/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
F. PHILIP CARBULLIDO
Chief Justice